

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-2-2008

# Nijhawan v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 06-3948

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Nijhawan v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1096.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1096

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3948
_____

MANOJ NIJHAWAN,
Petitioner

v.

ATTORNEY GENERAL
OF THE UNITED STATES,
Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A39 075 734)
Immigration Judge:  Walter A. Durling

_____

Argued December 11, 2007

Before:  RENDELL and STAPLETON, <u>Circuit Judges</u>,
and IRENAS*, <u>District Judge</u>.

(Filed May 2, 2008)

Thomas E. Moseley   **[ARGUED]**
Suite 2600
One Gateway Center
Newark, NJ   07102
   *Counsel for Petitioner*

Michelle G. Latour
Lyle D. Jentzer
Jamie M. Dowd    **[ARGUED]**
U.S. Department of Justice
Office of Immigration Litigation
P. O. Box 878
Ben Franklin Station
Washington, DC   20044
   *Counsel for Respondent*

_____

OPINION OF THE COURT

_____

_____

   *  Honorable Joseph E. Irenas, Senior Judge of the United
States District Court for the District of New Jersey, sitting by
designation.

2

RENDELL, Circuit Judge.

Manoj Nijhawan appeals from the determination of the Board of Immigration Appeals ("BIA") that he had committed an aggravated felony and was thus removable under 8 U.S.C. § 1101(a)(43)(M)(i) because his conspiracy conviction constituted an offense involving fraud or deceit in which the loss to the victims exceeded $10,000. Nijhawan challenges both aspects of this finding, the "involving fraud" prong as well as the "loss" aspect. As to the latter, he contends that, in order to satisfy the qualifying language, the loss amount had to have been adjudicated as part of his conviction, and was not. We reject both challenges and will proceed to address each in turn.

The indictment involved a scheme by individuals who, it was alleged, set out to deprive their victims, major banks, of "hundreds of millions of dollars." A.R. 229. Through a series of misrepresentations, the banks were induced to make a number of loans to the defendants' companies, among them Allied Deals, Inc. Nijhawan, who was the Deputy General Manager of Allied Deals, Inc., was listed in Count 1, the overall conspiracy count that contained the general loss allegation as to the entire fraud scheme and involved conspiracy to commit bank fraud, mail fraud, and wire fraud in violation of 18 U.S.C. § 371, and in Count 30, which alleged conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). The remaining counts were fraud counts implicating one or more of the other defendants in specific fraudulent loans ranging from $163,441 to $2,568,526. The case was tried before a jury, which convicted Nijhawan of all of the counts against him in the indictment. The jury was not asked to, nor did it, determine the

amount of the loss attributable to any defendant.

Nijhawan entered into a stipulation for sentencing purposes in which he agreed that, "because the loss from the offense exceeds $100 million, the offense level is increased 26 levels." A.R. 264. In entering the judgment of conviction, the trial judge filled in the space for "loss" with the amount "$683,632,800.23." A.R. 281. The form footnoted the fact that "findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18." A.R. 281. Nijhawan was sentenced to 41 months of imprisonment and ordered to pay restitution in the amount of $683,632,800.23. No appeal was taken.

While Nijhawan was serving his sentence, he was charged with removability under 8 U.S.C. § 1101(a)(43)(D) for conviction of a money laundering offense under 18 U.S.C. § 1956 for which the amount laundered exceeded $10,000 and under 8 U.S.C. § 1101(a)(43)(M)(i) for conviction of a crime involving fraud or deceit in which loss to the victims exceeded $10,000. The IJ sustained both charges, relying primarily on the § 1101(a)(43)(D) charge, and entered an order of removal on February 22, 2006.

On appeal, the BIA rested its decision solely on the 8 U.S.C. § 1101(a)(43)(M)(i) charge. A.R. 2 ("We will affirm the decision of the Immigration Judge insofar as he found the respondent removable as an alien convicted of an aggravated felony as defined in sections 101(a)(43)(M)(i) and (U) of the Immigration and Nationality Act"). The BIA rejected Nijhawan's argument that fraud in the Immigration and

4

Nationality Act ("INA") should be congruent with the common law meaning of the term. As to the loss determination, the BIA agreed that loss was not a necessary element of the offense for which he was convicted, noting that the loss requirement "was used as a qualifier, in a way similar to length of sentence provisions in other aggravated felony subsections." A.R. 4 (citing *Singh v. Ashcroft*, 383 F.3d 144, 161 (3d Cir. 2004)). It reasoned that, although the jury had not found a specific dollar amount in rendering its guilty verdict, the IJ could properly find loss based on the stipulation of facts for sentencing and the judgment of conviction stating that the loss involved is $683,632,800.23, jointly and severally. A.R. 4-5. The BIA held that the stipulation, judgment of conviction, and restitution order were "sufficient to establish that the respondent's conviction renders him removable." A.R. 5.

Nijhawan timely filed a petition for review, appealing the BIA's decision.[1] On appeal, Nijhawan argues (1) that his offense of conviction does not involve fraud or deceit as those terms are used in the INA; and (2) that his conviction did not establish that loss to his victims exceeded $10,000.

**1. Did the offense "involve fraud"**

---

[1]After serving his sentence, Nijhawan risked being immediately removed from the United States by United States Immigration and Customs Enforcement. He, therefore, filed a motion for a stay of removal, which we granted pending the resolution of the present appeal.

Nijhawan was convicted of conspiracy to commit fraud in violation of 18 U.S.C. § 371. The INA provision under which Nijhawan was charged with removability provides:

>    (43) The term "aggravated felony" means--
>
>    . . .
>
>    (M) an offense that--
>
>    (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.

8 U.S.C. § 1101(a)(43)(M)(i). Nijhawan contends that the "fraud" and "deceit" in this provision should be given their common law meaning, which requires actual reliance upon allegedly fraudulent statements made and harm from that reliance. Because actual reliance and harm from reliance are not necessary legal elements of the federal fraud statutes under which he was convicted, *Neder v. United States*, 527 U.S. 1 (1999), his conviction, Nijhawan urges, was not an aggravated felony. We can easily dispense with this argument.

In *Valansi v. Ashcroft*, we examined the very section of the INA at issue here and interpreted the language broadly. 278 F.3d 203 (3d Cir. 2002). We said:

>    we determine whether the phrase "offense that-involves fraud or deceit" has a plain meaning. The word "involves" means "to

6

have within or as part of itself" or "to require as a necessary accompaniment." *Webster's Third New International Dictionary* at 1191. Thus, an offense that "involves fraud or deceit" is most naturally interpreted as an offense that includes fraud or deceit as a necessary component or element. *It does not require, however, that the elements of the offense be coextensive with the crime of fraud*.

*Id*. at 209-10 (emphasis added); *see also Bobb v. Att'y Gen*., 458 F.3d 213, 218 (3d Cir. 2006) ("[W]e have held that subsection (M)(i) covers all offenses that have as an essential element an intent to defraud or deceive."); *Ki Se Lee v. Ashcroft*, 368 F.3d 218, 222 (3d Cir. 2004) ("Subsection (M)(i) has a general application–the gamut of state and federal crimes involving fraud and deceit causing losses over $10,000.").

Other circuits have followed our lead. *See Conteh v. Gonzales*, 461 F.3d 45, 59 (1st Cir. 2006) ("We agree with the Third Circuit. . . . An offense with a scienter element of either intent to defraud or intent to deceive categorically qualifies as an offense involving fraud or deceit."); *James v. Gonzales*, 464 F.3d 505, 508 (5th Cir. 2006) (noting that "[w]e recognize that '[w]hether an offense "involves" fraud is a broader question than whether it constitutes fraud'" and concluding that "[t]he plain language of § 1344 . . . provides that a violation of either subsection necessarily entails fraud or deceit").

Here, the criminal statutes under which Nijhawan was

7

convicted require that fraud or false or fraudulent pretenses be employed (mail fraud, wire fraud, and bank fraud). They therefore "involve" fraud or deceit for the purposes of the INA. Clearly, Nijhawan's arguments to the contrary are foreclosed by our precedent.

**2.    Was Nijhawan convicted of a fraud "in which the loss to the victims exceeded $10,000"?**

Nijhawan was convicted of conspiracy to commit fraud and therefore is subject to removal under 8 U.S.C. § 1101(a)(43)(U), which provides that "an attempt or conspiracy to commit" another aggravated felony constitutes an aggravated felony. The precise aggravated felony provision at issue here defines an aggravated felony as an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i).

As we have noted above, the "involves fraud" language of this provision permits the range of actual offenses to be broader than common law fraud. The issue remains, however, whether the language "in which the loss to the victim or victims exceeds $10,000" requires that a jury have actually convicted defendant of a loss in excess of $10,000, as Nijhawan contends, or permits resort to the prior criminal record in order to determine what loss was in fact occasioned by or attributable to the offense of conviction.

We conclude that the language of § 101(a)(43)(M)(i) does not require a jury to have determined that there was a loss in excess of $10,000. To read the "in which" language as

8

requiring that what follows must have been proven as an element of the crime would bring about an absurd result. Clearly, the phrase is, as the BIA found, qualifying and does not constitute a provable element. For example, what if the language were "in which the victims were elderly" or "in which three or more banks suffered losses"? Would the facts of these qualifying phrases have to have been proven as part of the offense? We suggest not.

To hold to the contrary would essentially gut every deportability standard containing the "in which" or other analogous qualifying language,[2] for we cannot imagine previous

---

[2] 8 U.S.C. § 1101(a)(43)(M)(ii) (conviction for an offense "that is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000"); *see also id*. § 1101(a)(43)(D) ("an offense described in section 1956 of Title 18 (relating to laundering of monetary instruments) or section 1957 of that title (relating to engaging in monetary transactions in property derived from specific unlawful activity) if the amount of the funds exceeded $10,000").

As we noted in *Singh*, analogous provisions include all subsections that limit convictions to those "for which the term of imprisonment is at least one year." *Id*. §§ 1101(a)(43)(F), (G), (J), (P), (R), & (S). Also relevant are subsections that exempt from the definition of aggravated felony "the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and

9

convictions in which an aspect of the crime that is not an element has been proven by the jury. To hold to the contrary would impose a totally impractical standard.

Notwithstanding our belief that reasonable minds could not differ on this issue, we acknowledge that other courts of appeals, and, indeed, Judge Stapleton, have reached a contrary conclusion. They have done so based upon the very argument that Nijhawan makes here, namely that the *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), line of cases require it. We suggest that this reasoning is flawed. The "in which" qualifying language renders the analysis under § 101(a)(43)(M)(i) different from the approach in *Taylor* and *Shepard*. In fact, we have already so stated.

In *Singh v. Ashcroft,* Judge Becker explored the contours of the applicability of the *Taylor-Shepard* approach to the concept of "aggravated felony" in the INA. 383 F.3d 144 (3d Cir. 2004). Both *Taylor* and *Shepard* involved the question of which court documents or records can be consulted to determine whether a prior conviction qualifies for a sentencing enhancement in a subsequent criminal proceeding.[3] These cases

---

no other individual) to violate a provision of this chapter." *Id*. §§ 1101(a)(43)(N) & (P).

[3]    In *Taylor v. United States*, the Supreme Court held that an enhancement for a prior conviction for "burglary" under § 924(e) required that either the statutory definition substantially

10

set forth what have become known as the "categorical" and "modified categorical" approaches to determining the crime of which the defendant was previously convicted. The categorical approach looks at the statute of conviction, comparing elements of the offense to the requirements of the enhancing provision. When the formal categorical approach of *Taylor* does not yield an answer, two different types of inquiry may be called into play. Judge Becker reviewed our jurisprudence and reasoned as follows regarding the precise issue before us:

> Our jurisprudence in the aggravated felony area – twelve cases in all – is not a seamless web.  In order to

---

correspond to "generic" burglary or the record demonstrate that the jury necessarily found all of the elements of generic burglary in order to convict the defendant. 495 U.S. 575 (1990).

In *Shepard v. United States*, the issue was whether the defendant's prior plea of guilty to burglary, under a statute that included generic burglary as well as nongeneric burglary such as burglary of a boat or motor vehicle, was a conviction for the violent felony of generic burglary under the Armed Career Criminal Act.  544 U.S. 13 (2005).  The Supreme Court rejected the notion that police reports or complaint applications could be used to show that the defendant had necessarily pled to the qualifying type of burglary, ruling instead that the sentencing court must look only at the "statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id*. at 16.

11

resolve the appeal we have found it necessary to analyze and synthesize this body of case law, and we do so at length. . . . As will appear, a pattern emerges, causing us to conclude that, while the formal categorical approach of *Taylor* presumptively applies in assessing whether an alien has been convicted of an aggravated felony, in some cases the language of the particular subsection of 8 U.S.C. § 1101(a)(43) at issue will *invite inquiry into the underlying facts of the case, and in some cases the disjunctive phrasing of the statute of conviction will similarly invite inquiry into the specifics of the conviction.*

*Singh,* 383 F.3d at 148 (emphasis added). Judge Becker thus correctly drew the crucial distinction between deportability language that, on the one hand, calls *Taylor* and *Shepard* into play, inviting inquiry into the specifics of the conviction, and, on the other, is essentially qualifying language not demanding a categorical analysis, but requiring, instead, inquiry into the underlying facts. Cases in which a court has recourse to the modified categorical approach generally involve "divisible" statutes, where the prior criminal offense, by statute, includes a wide range of activity but the requisite enhancing provision – such as violent felony or aggravated felony – requires one or

12

more particular elements that may or may not have been found as part of the conviction. The modified categorical approach entails scrutiny of the nature of the conviction itself and those elements that the jury necessarily found through an examination of judicial record evidence. If the jury did not necessarily find that element, the "conviction" will not fit within the enhanced category. *Taylor-Shepard* is thus implicated.

On the other hand, the instant enhancing provision is different. The language does not state "convicted of a $10,000 fraud." Rather, it reads, "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). As Judge Becker specifically stated, the provision before us here invites inquiry into "the underlying facts of the case." There is no issue here regarding which crime was committed by the petitioner under a divisible statute, in which event we would be limited to an examination of the "specifics of the conviction" and would employ the modified categorical approach of *Taylor* and *Shepard*.

Addressing the analysis required under the very provision at issue here, Judge Becker made clear that:

> [A] departure from the formal categorical approach seems warranted when the terms of the statute invite inquiry into the facts underlying the conviction at issue. *The qualifier "in which the loss to the victim or victims exceeds $10,000" in 8 U.S.C.*

13

*§ 1101(a)(43)(M)(i) is the prototypical example – it expresses such a specificity of fact that it almost begs an adjudicator to examine the facts at issue.* This principle explains our holdings in *Nugent* and *Munroe*. Another example would be an enumerating statute specifying crimes "committed within the last two years." Such a statute could not be read to cover only crimes which have "within the last two years" as an element; instead a court would read "within the last two years" as a limiting provision on crimes that would otherwise qualify.

In contrast, cases interpreting relatively unitary categorical concepts – like "forgery" (*Drakes*), "burglary" (*Taylor* itself) or "crime of violence" (*Francis* and *Bovkun*) – do not look to underlying facts because the enumerating statute does not invite any such inquiry. Likewise, the hypothetical federal felony trilogy (*Steele*, *Gerber*, and *Wilson*) asks only whether the elements of a federal criminal statute can be satisfied by reference

14

> to the actual statute of conviction;
> this presents no invitation to depart
> from *Taylor*'s formal categorical
> approach and examine the
> underlying facts.

383 F.3d at 161 (emphasis added). Accordingly, our Court's precedent directs us to "examine the facts at issue," because the amount of loss is a "qualifier," not an element.[4]

Our case law has consistently treated the amount of loss as a qualifier rather than an element of the crime. In 2003 in *Munroe v. Ashcroft*, we did not require that the defendant have specifically pled guilty to a loss amount. 353 F.3d 225 (3d Cir. 2003). To the contrary, we stated that "the indictment alleged that the loss exceeded this amount, and Munroe does not claim that when he pled guilty, he admitted to only a lesser loss. Nor is there any suggestion that the Superior Court ever found that the amount of the loss was less than $10,000." *Id*. at 227. For the purposes of § 101(a)(43)(M)(i), we looked to the indictment, which contained an averment as to loss in excess of $10,000,

---

[4]Our Court's view regarding the meaning of, and inquiry permitted by, 8 U.S.C. § 1101(a)(43) has been referenced approvingly by other courts. *See*, *e.g.*, *James v. Gonzales*, 464 F.3d 505, 510 n. 26 (5th Cir. 2006); *Conteh v. Gonzales*, 461 F.3d 45, 55 (1st Cir. 2006). We have also applied its rationale in interpreting other provisions of the INA. *See Joseph v. Att'y Gen.*, 465 F.3d 123, 127 (3d Cir. 2006); *Knapik v. Ashcroft*, 384 F.3d 84, 92 n. 8 (3d Cir. 2004).

15

rather than an amended restitution order, which reduced defendant's restitution to $9,999.[5]  However, we decided that the amount of loss in a restitution order, which by its nature is neither found by a jury nor specifically pled to by a defendant, could be considered.  *Id.* at 227 ("[T]he amount of restitution ordered as a result of a conviction may be helpful to a court's inquiry into the amount of loss to the victim if the plea agreement or indictment is unclear as to the loss suffered.").

Nijhawan contends that more recent authority, namely, our opinion in *Alaka v. Attorney General*, 456 F.3d 88 (3d Cir. 2006), contradicts *Singh* and *Munroe* and requires conviction of the requisite amount of loss.   In *Alaka*, the total loss averred in the indictment as to the overall scheme exceeded $10,000. However, Alaka pled guilty only to a single count in a plea agreement that referenced a loss to the victim of $4,716.68.  *Id.* at 92.   The other counts against Alaka were dismissed.  We concluded that Alaka's offense did not qualify for treatment as

---

[5] The dissent states that the holding in *Munroe* was based on a loss amount "admitted in the plea agreement."   This is incorrect as the district court's opinion in that case makes clear. *Munroe v. Ashcroft*, No. Civ. A. 02-2256, 2003 WL 21048961 (E.D. Pa. Jan. 16, 2003) ("In this case, the indictment stated that the fraud involved caused a loss to the victim in excess of $10,000.00. There is no evidence that the defendant pled guilty to any facts other than as alleged in the indictment.").   The holdings of both our court and the district court relied on the amount alleged in the indictment and found by the sentencing court, not an amount in the plea agreement.

16

an aggravated felony.  *Id*. at 108.

Nijhawan urges that *Alaka* stands for the proposition that the loss amount is an element to which the defendant must plead, or of which the defendant must be convicted.  We disagree.  To the contrary, *Alaka* stands for the unremarkable proposition that one who has admitted to a loss of less than $10,000 as part of a guilty plea cannot later be said to have been convicted of an offense involving fraud in which the loss to the victim exceeds $10,000.  Where there is a plea agreement that sets forth the loss it is to that agreement we must look to determine the loss.  *Alaka* does not require that the defendant plead to a specific loss amount; it requires only that, if he has, that amount is controlling.  *Alaka* does not limit the inquiry if no loss is stated in a plea agreement or submitted to a jury.  In fact, in *Alaka* we concluded that "the IJ properly considered the factual finding in the sentencing report." *Id*. at 105, 106.  *Alaka* requires only that we "focus narrowly on the loss amounts that are particularly tethered to the convicted counts." *Id*. at 107 (quoting *Knutsen v. Gonzales*, 429 F.3d 733, 739-40 (7th Cir. 2005)).

The only real issue in the case before us is whether the "tether" of a loss in excess of $10,000 to Count 1, the count of conviction, is sufficiently strong.  We have not previously opined as to the nature of the nexus required, or the breadth of the inquiry into the facts as authorized by *Singh*, and, here, we need only determine whether the record is sufficiently clear that the loss resulting from the convicted conduct exceeds $10,000.

Here, Count 1 of the indictment charged a conspiracy,

17

alleging that defendants "engaged in a fraudulent scheme to obtain millions of dollars in loans" from the victim banks and setting forth the scheme and roles of the co-conspirators. Nijhawan was convicted of Count 1, but the jury did not, and was not asked to, determine the amount of loss to the victims. However, in a stipulation for the purposes of sentencing on Count 1, Nijhawan agreed that the loss exceeded $100 million. And, in entering the judgment of conviction, the District Court made a finding of "Total Loss" in the amount of $683,632,800.23.  As in *Munroe*, here we have no argument, let alone anything in the record, that Nijhawan was convicted of an offense involving less than $10,000.  This is not a case where the jury's findings contradict the restitution order or loss was calculated on the basis of uncharged or unconvicted conduct. All the documents and admissions support a finding that the loss amounted to hundreds of millions of dollars.

We need not decide whether any of the "facts" here, standing alone, would suffice as a "tether," as we conclude that, taken together, the indictment, judgment of conviction, and stipulation provide clear and convincing evidence that the requisite loss was tied to Nijhawan's offense of conviction.

We note that we are not the only court of appeals to have viewed the inquiry into the record of conviction to permit examination of loss not specifically admitted in the plea colloquy or agreement or found by a jury as part of the

18

conviction.[6] The Court of Appeals for the First Circuit also has indicated that a court should look to loss occasioned by the conviction, rather than loss as an element found by the jury or explicitly incorporated in the plea agreement. *Conteh v. Gonzales*, 461 F.3d 45 (1st Cir. 2006). Exercising care in interpreting the "loss exceeds" language in § 1101(a)(43)(M)(i), the court recognized that "the distinction between *conviction for* and *commission of* an aggravated felony is an important one; because the BIA may not adjudicate guilt or mete out criminal punishment, it must base removal orders on convictions, not on conduct alone." *Id*. at 56. Thus, the court found it improper for the BIA to rely on a narrative statement in the PSI report, but did approve the BIA's reliance on the indictment, which alleged specific losses exceeding $10,000, and the final judgment, which included a finding of loss and restitution order. *Id*. at 59 (*quoting Shepard*, 544 U.S. at 21). As here, an indictment and judgment, indicating loss and restitution, were available and were a sufficiently reliable indication of the loss of which the petitioner had been convicted.

---

[6] Other courts permit a broader inquiry and have allowed loss amount to be established by reference to conduct that formed part of the same conspiracy as the convicted conduct, a broader inquiry than that we have here. *See Khalayleh v. INS*, 287 F.3d 978 (10th Cir. 2002) (where alien pleaded guilty to one count of the indictment which listed a check in the amount of $9,308 but agreed to pay restitution as determined by the sentencing court, the loss from the total scheme to defraud involving other checks could be counted); *see also James*, 464 F.3d at 511-12 (following *Khalayleh*).

In *Knutsen v. Gonzales*, a case upon which we relied in *Alaka*, the Court of Appeals for the Seventh Circuit similarly reasoned that "consistent with the statute . . . the court should focus narrowly on the loss amounts that *are particularly tethered to convicted counts* alone." 429 F.3d 733, 739-40 (7th Cir. 2005) (emphasis added). In that case, the petitioner had pled guilty to one count of a multi-count indictment, which listed a loss amount less than $10,000; for the purposes of the Sentencing Guidelines, however, he entered into a stipulation with the government in which he acknowledged that "the total loss from the offense of conviction and relevant conduct exceeded $20,000." *Id*. at 736. Because the stipulation included relevant conduct and was not limited to the loss connected to or caused by the offense of conviction, the court found that the IJ erred by relying on it, but did not require the plea colloquy to have included the specific loss. *Id*. at 739. The loss was not sufficiently "tethered" to the offense of conviction so as to constitute clear and convincing evidence that the petitioner had been convicted of an aggravated felony under § 1101(a)(43)(M)(i).

The decision of the Court of Appeals for the Eleventh Circuit in *Obasohan v. Attorney General* further substantiates our interpretation of this provision. 479 F.3d 785 (11th Cir. 2007). In that case, the petitioner had been ordered to pay restitution, due to fraudulent charges on other credit cards that were not the subject of the indictment or the plea agreement. *Id*. at 789-90. The court found it particularly significant that the petitioner objected to the PSI's assertion of loss due to additional conduct and "therefore did not admit, adopt, or assent to the factual findings that formed the basis of the restitution

20

order." *Id.* at 790. Given that the restitution order was based entirely on other unconvicted conduct, was not admitted by the petitioner, and was the only evidence that such loss had occurred, the IJ could not find loss by clear and convincing evidence. *Id.* at 790 (gathering cases and citing *Knutsen*, *Munroe*, and *Conteh* with approval). A restitution order could be evidence of the loss amount, but only if it was "based on the conspiracy charge to which Obasohan pled guilty, []or on the overt acts to which Obasohan admitted by pleading guilty," not "on *additional* conduct that was alleged only in the PSI." *Id.* at 789-90.

We should note that neither we nor these other courts have abandoned the *Taylor-Shepard* approach. Indeed, we still resort to it at the initial phase of our analysis because § 101(a)(43)(M)(i) instructs us to decide whether the alien has been convicted of a crime involving fraud or deceit. Employing the formal categorical approach and looking to the statute of conviction, we determined that Nijhawan's conviction involved fraud or deceit and thus was a proper predicate offense within the "aggravated felony" definition. Once this conclusion is reached, our case law then requires an "inquiry into the underlying facts of the case" to ascertain whether the "in which" qualifying loss provision is satisfied.

Nijhawan urges that we should depart from our case law and follow those courts of appeals that have interpreted the loss requirement in INA § 101(a)(43)(M)(i) in a more restrictive way. In particular, he urges that we should adopt the reasoning of the Court of Appeals for the Second Circuit, which has set forth a rule that the loss requirement must be established by

21

"facts actually and necessarily found beyond a reasonable doubt by a jury or judge in order to establish the elements of the offense, as indicated by a charging document or jury instructions." *Dulal-Whiteway v. U.S. Dep't of Homeland Sec.*, 501 F.3d 116, 131 (2d Cir. 2007).[7] There, the court determined that, because restitution was not necessarily found by the jury, a restitution order was insufficient to establish that the fraud conviction was one "in which the loss to the victims exceeds $10,000." *Id*. at 130. The Court of Appeals for the Ninth Circuit also applied the "modified categorical" approach to the loss requirement in *Li v. Ashcroft* and found that it was improper to rely on the charging document, which described specific loss amounts, and the judgment of conviction for those counts, because it had "in the record no jury instructions, verdict form, or other comparable document suggesting that the jury actually was called on to decide, for example, that Petitioner's false claims were for a particular amount." 389 F.3d 892, 898 (9th Cir. 2004) (expressing no opinion however "as to whether a defendant's admission of a specific sentencing fact would suffice"). As we noted above, we conclude that this treatment of the qualifying language as setting forth an element of the offense is uncalled for and makes little sense. While our dissenting colleague urges that express conviction of the loss amount will lend certainty and ease to the analysis, we do not

[7]In the case of pleas of guilty, the dissent's rule restricts inquiry to "facts to which a defendant actually and necessarily pleaded in order to establish the elements of the offense, as indicated by a charging document, written plea agreement, or plea colloquy transcript." 501 F.3d at 131.

22

think this justifies our embracing an interpretation of the language that will render the provision toothless.

Moreover, our case law clearly rejects the restrictive interpretation of INA § 101(a)(43)(M)(i)'s loss requirement adopted by the Second Circuit in *Dulal-Whiteway* and the Ninth Circuit in *Li. Munroe*, *Singh*, and *Alaka* make clear that the loss amount need not be found specifically by the jury or set forth in the plea agreement or colloquy.[8] Rather, as we have said, the loss requirement invites further inquiry into the facts underlying the conviction, and that inquiry is satisfied if the amount of loss is sufficiently tethered to the fraud conviction.

Had our prior precedent not compelled our conclusion, we still would firmly disagree with the restrictive interpretation. For, our decision actually fosters the principles the Second Circuit identified in *Dulal-Whiteway* and best comports with the text and purpose of the INA's aggravated felony provision. In *Dulal-Whiteway*, the Second Circuit noted that the words of the INA provision render deportable one who has been convicted of an aggravated felony, not one who has committed an aggravated felony. *Id*. at 132. We do not disagree with this and, much like the Court of Appeals for the First Circuit in *Conteh*, we endorse careful consideration of the record to determine whether it is sufficiently clear that the loss connected to the crime of conviction exceeded $10,000. As Judge Becker noted in *Singh*,

---

[8] In order to reach a contrary result, the dissent labels salient portions of our prior precedent "dicta." *See* dissenting op., n. 9 & 11.

23

the specific words "in which the loss to the victims exceeds $10,000" suggest just such an inquiry into the facts underlying the conviction. The requirement that we set forth today that the loss amount be sufficiently tied or tethered to the offense of conviction both responds to the Second Circuit's concern that a restitution order based upon conduct of which the defendant was not convicted should not be relied on, and does not arbitrarily cabin the inquiry.[9]

The difficulty in saying that the court will limit inquiry to the precise "record of conviction" used in the Armed Career Criminal context for purposes of determining loss under § 101(a)(43)(M)(i) is made manifest in the decisions of the Court of Appeals for the Ninth Circuit. That court appears to adopt

---

[9] The dissent posits that our opinion permits consideration of loss caused by "relevant conduct" rather than the conduct of conviction. This is not correct. By requiring that loss be tethered to the convicted conduct, we are excluding consideration of relevant conduct, as did the Court of Appeals for the Seventh Circuit in *Knutsen* and the Court of Appeals for the Eleventh Circuit in *Obasohan*. In fact, we use the word "relevant" only in discussing these courts' opinions.

Furthermore, there is no conduct in this case other than that underlying the conviction. The dissent incorrectly states that the conduct in Nijhawan's sentencing stipulation pertinent to the Guidelines enhancement and the restitution order includes relevant, as well as convicted conduct, as in *Obasohan*. It does not. In fact, this very clearly distinguishes *Obasahan* and *Knutsen*, cases with which we agree.

24

the requirement that the petitioner had to have been convicted of the loss, but then looks beyond what the jury found in order to determine loss amount. For example, in *Ferreira v. Ashcroft*, the court cited our decision in *Munroe* with approval and reasoned that there was no rule prohibiting immigration judges from looking to a restitution order to determine loss amount. 390 F.3d 1091 (9th Cir. 2004) (relying on *Munroe* and *Chang v. INS*, 307 F.3d 1185 (9th Cir. 2002)). Although the court has insisted that it is using the modified categorical approach, it has actually engaged in a broader inquiry.

Our holding today is consistent with the different evidentiary standards used in criminal, sentencing, and immigration proceedings, respectively. In *Dulal*, the Court of Appeals for the Second Circuit criticized the approach we endorse because, it believed, it "would permit the government to order an alien removed in the absence of the clear, unequivocal and convincing evidence required by [immigration] law." 501 F.3d at 132. However, its holding raises the standard of proof to beyond a reasonable doubt while our holding actually adheres to the "clear and convincing" standard. *Accord Conteh*, 461 F.3d at 56 (rejecting "the implicit proposition that the INA's use of the word "convicted" in 8 U.S.C. § 1227(a)(2)(A)(iii) elevates the government's burden in aggravated felony cases from clear and convincing evidence to proof beyond a reasonable doubt (that is, proof that facts were necessarily found by a criminal jury or admitted by the alien qua criminal defendant)").

Most fraud statutes, including the federal statutes at issue here, do not contain loss as an element or require that a jury find

loss or a defendant plea to a specific loss amount. As we noted above, insistence on loss as part of the conduct would render § 1101(a)(43)(M)(i) largely inoperative, for rarely will a defendant be convicted of a fraud offense with loss as an element found by the jury or explicitly admitted to in a guilty plea. Under the rule adopted in *Dulal-Whiteway* which the dissent embraces, a finding beyond a reasonable doubt would be required, not merely the allegation of a specific loss amount in a criminal indictment.[10] A jury would have to be charged as to loss amount and make a specific and additional finding.[11]

Unlike the Second Circuit, we find no "'daunting' practical difficulties" associated with looking to a wider array of records that possess a high indicia of reliability. It is well within the competence of a court to examine the record for clear and convincing evidence of loss caused by the conduct of

---

[10]In fact, *Li*, upon which the dissent relies, did not consider the charging document which listed specific loss amounts and the judgment of conviction on those counts to be sufficient to prove the loss amount precisely because the jury was not required to find a loss amount to a guilty verdict. 389 F.3d at 898. Here the prosecutor did in fact include the loss amount in the criminal indictment.

[11]It would necessarily be the prosecutor who would request this charge, for, if the rule espoused in *Dulal-Whiteway* applies, defense counsel would be content *not* to have the loss found by the jury. We must wonder why the prosecutor would ever ask the jury to find a fact not relevant to the conviction.

conviction. Indeed, we believe there are far greater practical difficulties inherent in attempting to bend the "modified categorical approach" of *Taylor* and *Shepard* to apply to a finding of the requisite minimum loss caused by fraud or deceit, which is rarely found by a jury or explicitly included in the plea agreement, because it is a qualifier, not an element of the offense. Moreover, we should not raise an aspect of an immigration statute to the level of an element of a criminal offense, as the dissent urges, merely because requiring that it be a part of the conviction eases a court's decision-making process.

Accordingly, because the petitioner was previously convicted of conspiracy to commit "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," he committed an aggravated felony, and we will deny his petition for review.

STAPLETON, J., <u>dissenting</u>:

I agree with the Court that Nijhawan's conviction for conspiracy to commit bank fraud, mail fraud and wire fraud constituted a conviction for conspiracy to commit an offense "that involves fraud or deceit" as defined by the INA. I therefore join Section 1 of the Court's opinion. I disagree, however, with the Court's conclusion that prior decisions of this Court compel the approach to the § 1101(a)(43)(M)(i) loss element that the Court adopts, and I believe that our Court should retain the INA's conviction requirement for that element. I would therefore grant the petition for review.

Under the Immigration and Naturalization Act ("INA"), "[a]ny alien who is *convicted* of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii) (emphasis added). The term "aggravated felony" is defined in 8 U.S.C. § 1101(a)(43) to include, *inter alia*, "an attempt or conspiracy to commit" "an offense that -- (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." *Id*. at §§ 1101(a)(43)(M)(i), 1101(a)(43)(U). Therefore, under the plain language of the INA, petitioner is removable only if he was "convicted" of a conspiracy to commit "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds

28

$10,000." *Id*.


Several Courts of Appeals, including ours, presumptively apply some variant of the "categorical approach" first articulated by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), and further explained in *Shepard v. United States*, 544 U.S. 13 (2005), to determine whether an alien's prior conviction qualifies as an "aggravated felony." Courts of Appeals have diverged, however, regarding how a reviewing court should determine whether an alien's prior conviction satisfies the $10,000 loss requirement of § 1101(a)(43)(M)(i). Although all Courts of Appeals permit the reviewing court to look beyond *Taylor's* "formal" version of the categorical approach – a simple comparison of the elements of the prior statute of conviction to the INA definition – and allow recourse to the "record of conviction" to some degree, courts disagree regarding the precise nature of that further inquiry. The Courts of Appeals for the Second and Ninth Circuits, and, as I read its precedent, the Eleventh Circuit, have adopted a "modified categorical approach" in which the reviewing court looks to the record of conviction in order to determine the facts upon which the petitioner's prior conviction actually and necessarily rested.[12] In contrast, the Court of Appeals for the First Circuit allows a

---

[12]*Dulal-Whiteway v. U.S. Dep't of Homeland Security*, 501 F.3d 116, 128 (2nd Cir. 2007); *Li v. Ashcroft*, 389 F.3d 892, 895-98 (9th Cir. 2004); *Obasohan v. Attorney General*, 479 F.3d 785, 788-89 (11th Cir. 2007).

broader inquiry under which immigration courts may scrutinize other facts, gleaned from the alien's record of conviction, to independently determine, by clear and convincing evidence, whether the crime resulted in a loss greater than $10,000.[13]  I find the approach of the Courts of Appeals for the Second and Ninth Circuits to be the better reasoned approach.

The Supreme Court articulated the *Taylor-Shepard* categorical approach when reviewing 18 U.S.C. § 924(e), which provides for a sentencing enhancement if a defendant has been convicted of certain enumerated prior offenses.  The Courts of Appeals have transplanted that categorical approach into the INA because of obvious similarities between the two inquiries.  The plain language of the INA, like § 924(e), mandates that the alien was "<u>convicted</u>" of the prior offense designated in the INA as an "aggravated felony."  It is not sufficient for the BIA to independently conclude that the alien "has committed" that prior offense.  Therefore, the INA, like § 924(e), requires a comparison of the <u>prior conviction</u> to the generic definition of the pertinent aggravated felony – in this case, §§ 1101(a)(43)(M)(i) and (U).

The rationale is not just a textual one, however.  Courts have adopted categorical approaches for the INA also because

---

[13] *See Conteh v. Gonzales*, 461 F.3d 45 (1st Cir. 2006).

the INA inquiry involves the same sorts of practical difficulties and fairness concerns underlying the Supreme Court's decisions in *Taylor* and *Shepard*. As the Second Circuit explained, "the BIA and reviewing courts are ill-suited to readjudicate the basis of prior criminal convictions." *Dulal-Whiteway*, 501 F.3d at 132. *See also id.* ("we decline the invitation to piece together an underlying attempt conviction by weighing evidence and drawing conclusions in a manner appropriate only for a criminal jury") (quoting *Sui v. I.N.S.*, 250 F.3d 105, 119 (2nd Cir. 2001)); *Shepard*, 544 U.S. at 23 (a purpose of the categorical approach is the "avoidance of collateral trials"). As the Second Circuit also recognized, the categorical approach promotes basic precepts of fairness. *Id*. at 133 ("'[I]f the guilty plea to a lesser, [non-removable] offense was the result of a plea bargain, it would seem unfair to [order removal] as if the defendant had pleaded guilty to [a removable offense].' [*Taylor*, 495 U.S.] at 601-02. By permitting the BIA to remove only those aliens who have actually or necessarily pleaded to the elements of a removable offense, our holding promotes the fair exercise of the removal power").[14] In sum, I agree with the Court of Appeals

[14]The Court of Appeals for First Circuit found such fairness concerns less than compelling because *Shepard* had emphasized that, in the context of sentencing enhancements under § 924(e), those concerns also raise Sixth Amendment problems, and such constitutional concerns are inapplicable in civil removal proceedings. *Conteh*, 461 F.3d at 55. However, *Taylor* and *Shepard* were rooted in basic notions of fairness that extend beyond the protections of the Sixth Amendment, and we, like the Second Circuit, began to adopt categorical approaches for

for the Second Circuit that the same practical and fairness difficulties identified by *Taylor* and *Shepard* would attend an interpretation of the INA that allowed immigration courts to reopen the factual record of prior criminal convictions and undertake new factual findings, utilizing a different standard of proof, to determine whether a required element (a $10,000 loss) was met. Indeed, if the loss requirement is not subject to the conviction requirement, why limit the evidentiary net to the prior record of conviction at all? Absent the conviction requirement, the standards become arbitrary.[15]

the INA before *Shepard* articulated its Sixth Amendment rationale. *Dulal-Whiteway*, 501 F.3d at 132-33. *See Shepard*, 544 U.S. at 20 ("certainly, 'the practical difficulties and potential unfairness of a factual approach are daunting,' no less in pleaded than in litigated cases") (internal citation omitted).

[15]The Court concludes that the loss must merely be found by the Immigration Judge and BIA under their "clear and convincing evidence" standard and be "tethered" to the conviction. The Court does not define the "tethered" test further but merely holds that it is satisfied by the facts of this case. The holding provides no guidance to the Immigration Judges who will apply Sections 1227(a)(2)(A)(iii) and 1101(a)(43)(M)(i). Under the standard the Court adopts, for example, would a future IJ be permitted to conclude (under its clear and convincing evidence standard) that the $10,000 loss is established, and is "tethered" to the alien's conviction, by looking to facts in a pre-sentence investigation report ("PSI"), or to facts in a police report, or to select evidence presented in

the criminal trial, or to new testimony or documents introduced at the removal hearing? The task of defining the "tethered" inquiry will fall to future panels of this Court, and with the loss element divorced from the conviction requirement, the task will not be an easy one.

The First Circuit, the only other court to have deviated from the modified categorical approach, sought to provide answers to these questions in *Conteh*, but that opinion demonstrates the analytical difficulty of defining the loss inquiry once it is divorced from the conviction requirement. *Conteh* made two fundamental rulings regarding the loss inquiry. *Conteh* first ruled, as does the Court today, that the INA does not require a convicted loss but rather merely a determination by the IJ, under its ordinary clear and convincing evidence standard, that the loss requirement is satisfied. *Conteh*, 461 F.3d at 55-56. This ruling allowed it to conclude that the IJ did not err by relying on a restitution order, which could have included "relevant" but un-convicted conduct and facts found by a mere preponderance of the evidence. *Id*. at 59. *Conteh* next, however, joined every Court of Appeals to have addressed this issue by ruling that the inquiry is limited to the "record of conviction." *Id*. at 57. In reaching this latter ruling the Court "emphasize[d] that the difference between [its] approach and that of the Ninth Circuit [which the Second Circuit subsequently joined] is only a matter of degree," *id*. at 56, and it agreed that "because the BIA may not adjudicate guilt or mete out criminal punishment, it must base removal orders on convictions, not on conduct alone." *Id*. Based on this second ruling, the Court concluded that the IJ *did* err by looking to a PSI and to

33

Because of the plain language of the INA, as well as the practical and fairness concerns that I have discussed, I am wary of permitting immigration courts to undertake *de novo* factual inquiries, under the "clear and convincing evidence" standard, into facts merely "relevant to," or "tethered to," an alien's prior conviction. I would permit immigration courts to look to the record of conviction, but only to establish "that a prior conviction 'necessarily' involved ([or] a prior plea necessarily

---

testimony presented in the removal hearing: the Court reasoned that restitution orders (memorialized in the final judgment) were part of the "record of conviction," but that the other two types of evidence were not. *Id.* at 57-59. The Court allowed recourse to restitution orders by ruling, as does the Court today, that the alien need not have been actually convicted of a loss; however, the Court rejected the IJ's other two sources of evidence because they fell outside of the "record of conviction" as that Court defined it, a limit which must derive from the conviction requirement. In other words, the Court found that the INA's conviction requirement applies to the loss inquiry in some respects but does not apply to it in other respects. Certainly no such line appears in § 1101(a)(43)(M)(i). I also note that allowing unqualified reliance upon restitution orders would allow future IJs to look to facts a prior sentencing court may have found by a mere preponderance of the evidence and to elevate those facts to the higher "clear and convincing evidence" standard, without the benefit of having the underlying evidence before it.

34

admitted) facts equating to [the generic offense in the INA statute]." *Shepard*, 544 U.S. at 24. *See also Dulal-Whiteway*, 501 F.3d at 128 ("while the issue of statute divisibility and reliance upon the record of conviction are theoretically separable, in practice they demand a single inquiry: has an alien been actually and necessarily convicted of a removable offense?"); *Li*, 389 F.3d at 895-98. The "necessarily" pleaded or convicted requirement explains and defines the "record of conviction" inquiry: once the court determines that the statute of conviction proscribes both conduct that would constitute an "aggravated felony" and conduct that would not, the court consults the record of conviction to determine the type of conduct the conviction necessarily includes. *Dulal-Whiteway*, 501 F.3d at 131; *Li*, 389 F.3d at 895-96.

In this case, loss was not an element of the crime of conviction. The conspiracy count of the indictment did assert a fraudulent scheme to obtain "hundreds of millions of dollars" in loans from major banks, but the Court in petitioner's criminal trial instructed the jury that it need not find any loss in order to convict. A.R. at 150, 156, 158. We thus know that despite the averment of the indictment, the jury's verdict does not establish that petitioner was convicted by it of conspiracy to commit fraud occasioning any particular amount of loss. The BIA and our Court acknowledge as much. As a result, they point not to the indictment and verdict to support their conclusion, but rather the record of the subsequent sentencing proceedings. Specifically, they focus attention on (1) the sentencing judge's order that all defendants be jointly and severally liable for restitution in

35

excess of $10,000; and (2) the petitioner's stipulation with the government that a correct application of the U.S. Sentencing Guideline to petitioner's convictions on Counts 1 (conspiracy to commit fraud) and 30 (conspiracy to commit money laundering) produced a base offense level of 38, an offense level including an enhancement "[b]ecause the loss from the offense exceeds $100,000,000." A.R. at 264. Neither portion of the sentencing record, however, establishes that petitioner has been "convicted" of causing a $10,000 loss.

With respect to the sentencing judge's restitution order, I agree with the Second and Eleventh Circuits that it does not support a conclusion of removability. As the *Dulal-Whiteway* Court put it in the context of a guilty plea case:

> The restitution set by a judge is based on a loss amount established by a preponderance of the evidence and need not be tied to the facts admitted by defendant's plea. . . . In other words, the amount of the restitution is not constrained by facts upon which the plea "necessarily" rested.

*Dulal-Whiteway*, 501 F.3d at 130. See also *Obasohan v. Attorney General*, 479 F.3d 785 (11th Cir 2007) ("[W]hile a sentencing court in the criminal context may order restitution

not only for *convicted* conduct but also for a broad range of *relevant* conduct, the plain language of the INA requires that an alien have been *convicted of* an aggravated felony to be removable."). I also agree with those courts that a contrary conclusion would put one facing removal and lifetime exclusion in a difficult and unfair position.

> We note that if the immigration court were authorized to base a finding of an aggravated felony on conduct and victim losses that were not charged, proven or admitted, it would be impossible for a criminal defendant to evaluate the immigration consequences of a guilty plea at the time of entering that plea, because those consequences would be known only at the time of sentencing. Where loss amounts are charged and proven or admitted, however . . . no such concern arises.

*Obasohan*, 479 at 791, n.12.

For much the same reasons, I would reach the same conclusion with respect to the propriety of the BIA consulting the sentencing stipulation of the parties in this case. The stipulation with respect to the application of the Sentencing

37

Guidelines in this case is not the equivalent of a plea or plea agreement admitting to an element of the offense of conviction. This stipulation came both after petitioner's conviction and in the context of a sentencing regime that requires consideration of losses from relevant as well as convicted conduct.[16]

It is true, as the Court stresses, that retention of the convicted conduct requirement will result in the BIA being able to remove fewer aliens on the ground that they have been convicted of an aggravated felony. I do not find that problematic because that appears consistent with the Congressional intent reflected in 8 U.S.C. § 1227(a)(2)(A)(iii). If there is a problem, however, I would reserve it for legislative correction. Furthermore, the modified categorical approach does not, as the Court suggests, elevate the government's burden

---

[16]The Court suggests that neither petitioner's sentencing stipulation nor the sentencing court's restitution order involved consideration of relevant conduct. It fails to explain, however, how it knows this to be true. The stipulation was solely for the purpose of a guideline regime that requires consideration of losses from relevant as well as convicted conduct and, there being no limitation to the later, the stipulation clearly applied to both. *See* U.S.S.G. § 1B1.3, Application Notes 1-2. The restitution regime, like the Guidelines, also allows the Court to consider losses from relevant conduct, and nothing I have found in the record suggests that petitioner's sentencing court focused on the distinction.

of proof in immigration cases from "clear and convincing evidence" to "beyond a reasonable doubt." It merely requires the government to prove, by clear and convincing evidence, that the alien was actually "convicted" of the asserted "aggravated felony." *See Obasohan v. Attorney General*, 479 F.3d 785, 790 (11th Cir. 2007) ("There was no basis in this record from which the IJ could have found by 'clear, unequivocal and convincing' evidence that the restitution order was based on convicted or admitted conduct.").

This Court has never before found an alien deportable for conduct the alien was neither convicted of nor pled guilty to; the Court's approach, therefore, will significantly expand the reach of the INA's "aggravated felony" provisions in this Circuit. As the Court emphasizes, in *Singh v. Ashcroft*, 383 F.3d 144 (3d Cir. 2004), we reviewed our "aggravated felony" jurisprudence and concluded that we had failed to follow the "formal" categorical approach in three cases, all of which applied § 1101(a)(43)(M)(i).[17] That provision, the Court stated, "begs an adjudicator to examine the facts at issue." *Id*. at 161. *Singh* did not explain precisely which facts were "at issue." However, it suggested a "further inquiry" much like the one I would adopt. *Singh* was decided prior to the Supreme Court's opinion in

---

[17] *Singh* itself merely held that, when applying a different "aggravated felony" definition, "sexual abuse of a minor," 8 U.S.C. § 1101(a)(43)(A), this Court should follow the strict categorical approach. *Singh*, 383 F.3d at 163-64.

*Shepard*, and the Court reviewed our prior case law only to determine when we had applied the "formal" version of the categorical approach described in *Taylor*. As the *Singh* Court explained,

> "[u]nder that approach, an adjudicator 'must look only to the statutory definitions of the prior offenses,' and may not 'consider other evidence concerning the defendant's prior crimes,' including, 'the particular facts underlying [a] conviction.'"

*Singh*, 383 F.3d at 148 (quoting *Taylor*, 495 U.S. at 600). That "formal" approach is essentially the first step of the two-step inquiry of the Courts of Appeals for the Second and Ninth Circuits. The *Singh* Court concluded that "a departure from the formal categorical approach seems warranted when the terms of the [INA's definition of an "aggravated felony"] invite inquiry into the *facts underlying the conviction*," *Singh*, 383 F.3d at 148 (emphasis added), and that § 1101(a)(43)(M)(i) is such a statute. *Singh* did not, however, suggest divorcing the § 1101(a)(43)(M)(i) "qualifier" from the INA's conviction requirement entirely.[18] The Supreme Court offered further

---

[18]*Singh* recognized that either (1) a statute of conviction containing a disjunctive element under which one part of the

40

guidance on the categorical approach in *Shepard*, less than a year after we decided *Singh*. *Shepard* reemphasized that the inquiry is not limited to a formal comparison of statutory elements but rather should focus on identifying the facts upon which the prior conviction "necessarily" rested.[19]  *Singh's*

disjunctive would render the alien removable and one would not, a statute it termed "divisible," or (2) an element of the "generic" definition of the prior offense designated by the INA as an "aggravated felony," might force an IJ to look beyond the "formal" categorical approach. However, I do not read *Singh* to say that the former situation invokes *Taylor* and *Shepard*, while the latter authorizes the IJ to undertake a broad factual inquiry. *Singh* simply recognized that both are instances where the statute of conviction sweeps more broadly than the INA's definition.  A statute of conviction containing a disjunctive element under which one part of the disjunctive would render the alien removable and one would not is "divisible," and similarly a statute of conviction containing no loss element is "divisible" under § 1101(a)(43)(M)(i) into (1) convictions for aggravated felonies where the loss is more than $10,000 and (2) other convictions where it is less than $10,000.  In either instance, the nature of the inquiry does not change.  The Second Circuit properly interpreted *Singh* in this manner.  *Dulal-Whiteway*, 501 F.3d at 127-28.

[19]*Shepard* held that a guilty plea constitutes a "conviction," and that a reviewing court may look to a "transcript of plea colloquy or [the] written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the

41

conclusion that § 1101(a)(43)(M)(i) invites further inquiry beyond the formal approach in order to determine "the facts underlying the conviction" is entirely consistent with *Shepard's* admonition to focus on the facts "a prior conviction 'necessarily' involved." *Shepard*, 544 U.S. at 24. And, those inquiries are essentially the "modified" or second step of the categorical approach of the Courts of Appeals for the Second and Ninth Circuits.

Our opinion in *Munroe v. Ashcroft*, 353 F.3d 225, 227 (3d Cir. 2003), also did not abandon the INA's conviction requirement for the § 1101(a)(43)(M)(i) loss element. In *Munroe*, we merely held that an immigration court should not rely on the restitution order to establish the loss when the

---

defendant upon entering the plea," to determine precisely what conduct the defendant pled guilty to. *Shepard*, 544 U.S. at 20. In so doing the Court reemphasized that, when the conviction resulted from a jury verdict, the Court is not limited to a comparison of the statutory elements – the "formal" version of the categorical approach upon which *Taylor* had largely focused – but also may undertake an analogous inquiry, looking to "charging documents[] and jury instructions to determine whether an earlier conviction after trial was for [the generic enumerated offense]." *Shepard*, 544 U.S. at 16. In either instance, the inquiry is to determine whether the conviction "had 'necessarily' rested on the fact identifying the [prior crime] as [the enumerated offense]." *Id*. at 21.

42

convicting court's original restitution order had been based on the convicted loss, but the court subsequently reduced the restitution from just above, to just below, $10,000 only to affect subsequent deportation proceedings. *Munroe*, 353 F.3d at 227. We emphasized that the alien had pled guilty to two counts in the indictment, each of which specified a precise loss amount, and we concluded:

> "We agree . . . that the amount of loss involved in that conviction was greater than $10,000. The indictment alleged that the loss exceeded this amount, and Munroe does not claim that, when he pled guilty, he admitted to a lesser loss."

*Id*. This holding is based on a *convicted* loss amount (admitted in the plea agreement) and is therefore entirely consistent with cases such as *Shepard* and *Dulal-Whiteway*.[20]

---

[20]Although the *Munroe* Court opined that, in different circumstances, the amount of restitution ordered "may be helpful" to determine the loss amount, *id*., I do not find that *dicta* controlling in this case. The Court's holding was that the restitution order should *not* have been relied upon in that case. I interpret the Court's statement as merely declining to adopt any broad-based rule regarding restitution orders and instead limiting the Court's holding to the (somewhat unusual) facts of

Our opinion in *Alaka v. Attorney General*, 456 F.3d 88 (3d Cir. 2006), is also consistent with this approach.[21] *Alaka* stated that "the formal categorical approach properly may be abandoned . . . when the terms of the statute on which removal is based invite inquiry into the facts of the underlying conviction," *id.*, and that (M)(i) "invites further inquiry." *Id.* However, much like *Singh*, *Alaka* stated that the "further inquiry" is to identify "the facts underlying the conviction," *id.*, and the Court further explained that "[a] focus on the conduct that resulted in a conviction is thus our analytical starting point." *Id.* at 107. Indeed, *Alaka* expressly rejects reliance upon "relevant" but unconvicted losses calculated for sentencing purposes; to do so, the Court explained, "would divorce the $10,000 loss requirement from the conviction requirement . . . because relevant conduct for sentencing purposes need not be admitted, charged in the indictment or proven to a jury." *Id.* at 108 (internal quotation marks and citations omitted). That is precisely what the Court's approach does: the Court finds that the § 1227 conviction requirement applies to the "fraud or deceit" component of § 1101(a)(43)(M)(i), but that the loss

---

that case.

[21]As the Court emphasizes, *Alaka* simply held that, if an alien pleads guilty to one count in an indictment, he or she cannot be deported for conduct alleged in a different, unpled and unconvicted count of the indictment. *Id.* at 106. However, *Alaka's* reasoning supports the approach I would adopt.

44

element is merely a "qualifier" not subject to that conviction requirement, thus divorcing the two.[22]

Because I would join those Courts of Appeals which require that removability under § 1227 and § 1101(a)(43)(M)(i) be predicated on convicted conduct, and because the record does not demonstrate that petitioner was actually and necessarily

---

[22]Although *Alaka* did state that the IJ could consider factual findings in the sentencing report, *id*. at 105, I would not rely on that *dicta* because to do so here would be contrary to *Alaka's* clear rationale. *Alaka* does not explain precisely when a court may look to facts found in a sentencing report, but the Court's holding did not rely on any such facts: the Court emphasized that, "as was the case with *Knutsen* and *Chang*, *Alaka* unmistakably pled guilty to one count, and the plea agreement plainly documented that loss at less than $10,000." *Alaka*, 456 F.3d at 108.

*Alaka's* reference to the sentence may have been a recognition that, for "aggravated felonies" other than the one at issue in this case, the INA expressly directs courts to look to the sentence, and therefore a *per se* rule that courts can never look to facts found in a sentencing report is certainly not appropriate. *See Singh*, 383 F.3d at 162 (8 U.S.C. § 1101(a)(43)(G) directs courts to look to the sentence actually imposed because that definition states "a theft offense . . . for which the term of imprisonment *[imposed is] at least one year*," whereas other § 1101(a)(43) definitions include the qualifier "for which a sentence of one year imprisonment or more *may be imposed*") (bracketed text in original; emphasis added).

convicted of any particular loss, I would grant the petition for review.