[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 23, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-13332

_____

BIA No. A26-646-179

JULIUS OBASOHAN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 23, 2007)**

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

BARKETT, Circuit Judge:

Julius Obasohan, a lawful permanent resident, petitions for review of the

Board of Immigration Appeals' ("BIA") May 18, 2001 order affirming the

Immigration Judge's ("IJ") denial of Obasohan's motion for reconsideration. The BIA affirmed the IJ's determination that Obasohan's prior conviction qualified as an "aggravated felony" under Section 101(a)(43)(M)(i) of the Immigration and Nationality Act ("INA") (codified as 8 U.S.C. § 1101(a)(43)(M)(i)) because it involved "fraud or deceit in which the loss to the victim or victims exceed[ed] $10,000." We conclude that the IJ and BIA erred by relying on conduct that was not charged, proven or admitted to determine that Obasohan had been convicted of an "aggravated felony." The petition is therefore GRANTED.[1]

## I. Background

On February 11, 1993, Julius Obasohan and Oromie Ogionwo were indicted on one count of conspiracy to produce, use and traffic in counterfeit access devices, in violation of 18 U.S.C. § 1029(b)(2). Specifically, the indictment charged that:

> From on or about a time unknown to the Grand Jury, to on or about February 1, 1993 . . . the defendants . . . did knowingly and willfully combine, conspire, confederate and agree with each other and with persons unknown to the Grand Jury . . . to produce, use, and traffic in

---

[1] Because we grant the petition, we need not reach Obasohan's other arguments on appeal, that (1) his counsel was ineffective in failing to timely file a motion for waiver of deportation under former INA § 212(c); (2) the immigration service violated his due process rights because the charge against him only contained a statutory citation and no factual allegations; and (3) the IJ violated his due process rights by failing to notify him of the various forms of relief from deportation for which he could apply.

one or more counterfeit access devices, in violation of Title 18, United States Code, Section 1029(a)(1).[2]

The indictment then charged the following enumerated overt acts in furtherance of the conspiracy: (1) Ogionwo presented a false driver's license in the name of Robert L. Voelkell, Jr., to a postal employee; (2) Ogionwo obtained mail containing a Discover credit card in Voelkell's name; and (3) Ogionwo delivered the mail containing that Discover credit card to Obasohan.

On May 4, 1993, Obasohan agreed to plead guilty to the sole count in the indictment pursuant to a plea agreement.  In the agreement, Obasohan acknowledged that the court could order restitution, but did not admit to any loss. During the plea colloquy, the court asked the Government, "what would be the proof as to the loss in this particular case?"  Counsel for the Government responded that "in this particular case, there was no loss because the new credit card was being sent to the recipient."  The court then stated, "so the amount of loss would be zero," and the Government responded, "that's correct."  Counsel also stated, however, that the Government continued to pursue leads that could lead to

---

[2] Section 1029(a)(1) makes it a crime for anyone to "knowingly and with intent to defraud produce[], use[], or traffic[] in one or more counterfeit access devices." 18 U.S.C. § 1029(a)(1).  Section 1029(b)(2) prohibits "a conspiracy of two or more persons to commit an offense under subsection (a) of this section, if any of the parties engages in any conduct in furtherance of such offense . . . ." Id. at 1029(b)(2).

evidence of thousands of dollars of loss tied to the use of *another* credit card. The

court accepted Obasohan's plea and convicted him as charged.

After the plea, the Probation Office prepared a Presentence Investigation

Report ("PSI") stating that further investigation had uncovered Obasohan's

fraudulent use of other credit cards which had caused losses in excess of $37,000

to three financial institutions. The PSI recommended that Obasohan be ordered to

pay restitution in that amount pursuant to 18 U.S.C. § 3663.[3] Obasohan filed

written objections to the PSI, challenging the assertion that he used any of the

credit cards identified in the PSI.

The court overruled Obasohan's objections, sentenced him to 41 months

imprisonment, and ordered restitution as recommended in the PSI. We affirmed,

concluding that a court does not exceed its authority by ordering a defendant "to

pay restitution for losses which result from acts done in furtherance of the

conspiracy of which the defendant is convicted." United States v. Obasohan, 73

F.3d 309, 311 (11th Cir. 1996).

---

[3] At the time, Section 3663 provided that, "[f]or the purposes of restitution, a victim of an offense that involves as an element a scheme, a conspiracy, or a pattern of criminal activity means any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663(a)(2) (1993). In addition, Section 3663 provided that "[t]he court may also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." Id. at § 3663(a)(3).

The former Immigration and Naturalization Service ("INS")[4] subsequently charged Obasohan with removability under 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." After considering Obasohan's guilty plea, the judgment of conviction (which included the court's restitution order), the PSI, and the portion of the plea colloquy described above, the IJ determined that Obasohan was removable for having been convicted of an "aggravated felony."[5] The IJ relied on the INA's definition of "aggravated felony," which includes "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i).

When the BIA remanded the case to the IJ on another issue, Obasohan again raised his challenge to the aggravated felony finding, arguing that he had not been convicted of an offense involving a loss of more than $10,000 because the only conduct alleged in the indictment involved a credit card that was never used. The IJ stood by its original decision, finding that, "[w]hile only one overt act was

_____

[4] The INS was abolished on March 1, 2003, and its functions were transferred to the Department of Homeland Security ("DHS"). See Homeland Security Act, Pub.L.No. 107-296, § 471 (Nov. 25, 2002), 116 Stat. 2135, 2205 (2002) (codified as amended at 6 U.S.C. § 291(a)). Since the relevant events in this case took place before that date, however, we refer throughout this opinion to the INS.

[5] Specifically, the IJ concluded: "There is ample evidence to establish that [Obasohan] has been involved in significant losses by credit card institutions and that the losses were the result of activities in which [he] engaged with his co-defendant."

alleged in the indictment to which the Respondent entered a plea of guilty, the conspiracy *alleged other losses* and the Respondent was ordered to pay restitution in excess of $37,000." (emphasis added). Obasohan filed a motion for reconsideration, which the IJ denied on the basis of its previous finding.

Obasohan appealed the IJ's denial of his motion for reconsideration. The BIA dismissed the appeal, concluding that Obasohan had failed to show any specific errors of fact or law in the IJ's decision, and that the IJ had correctly determined that Obasohan was "involved in activity that resulted in significant losses by credit card institutions."

Obasohan then filed a pro se petition for writ of habeas corpus in district court under 28 U.S.C. § 2241, challenging the legality of his order of deportation. When the REAL ID Act was signed into law, the district court transferred the then-pending petition to this Court in accordance with § 106(c) of the Act. We now treat the matter as a petition for review.[6] Pub.L. 109-13, Div. B, Title I, § 106(c), 119 Stat. 311, 8 U.S.C. § 1252 note.

We have jurisdiction over constitutional claims and questions of law raised in this petition. 8 U.S.C. § 1252(a)(2)(D). We review the denial of a motion for reconsideration for abuse of discretion. Assa'ad v. U.S. Att'y Gen., 332 F.3d

---

[6] Although the Attorney General initially challenged the timeliness of the petition and this Court's jurisdiction to hear the petition, it has since conceded that its position was legally incorrect.

6

1321, 1341 (11th Cir. 2003). A motion for reconsideration must specify the errors of law or fact on which the previous order was based. 8 U.S.C. § 1229a(c)(6). "[A] mistake of law is, by definition, an abuse of discretion." United States v. Hoffer, 129 F.3d 1196, 1200 (11th Cir. 1997) (citation omitted). Whether Obasohan's conviction qualifies as an "aggravated felony" is a question of law that we review de novo. See United States v. Hooshmand, 931 F.2d 725, 737 (11th Cir. 1991); Balogun v. U.S. Att'y Gen., 425 F.3d 1356, 1360 (11th Cir. 2005).

## II. Discussion

The INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The INA specifically defines "aggravated felony" to include "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). To determine whether a prior conviction constitutes an aggravated felony, the IJ must first look to the language of the statute of conviction. See In re Ajami, 22 I. & N. Dec. 949, 950 (BIA 1999). If the statutory language contains some offenses that would qualify as aggravated felonies, and others that would not, then the statute is "divisible," and the IJ must look to "the record of conviction, meaning the indictment, plea, verdict, and sentence, to determine the offense of which the respondent was convicted." Id.; Jaggernauth v. U.S. Att'y Gen., 432 F.3d 1346, 1349 n.1 (11th Cir. 2005). The IJ's determination

7

that a prior conviction constitutes an "aggravated felony" must be supported by "clear, unequivocal, and convincing evidence." <u>Woodby v. INS</u>, 385 U.S. 276, 286 (1966); 8 U.S.C. § 1229a(c)(3)(A).

In this case, Obasohan was charged with, pled guilty to, and was convicted of, only one offense: conspiracy to produce, use and traffic in one or more counterfeit access devices, in violation of 18 U.S.C. § 1029(b)(2). Obasohan does not dispute that this offense involved fraud or deceit; he only challenges the IJ's determination that the conviction qualifies as an aggravated felony based on the loss amount stated in the restitution order.

The plain language of the INA requires that an alien have been "*convicted of an aggravated felony*" in order for that conviction to form the basis of removal. 8 U.S.C. § 1227(a)(2)(A)(iii) (emphasis added). For our purposes here, this means determining, under the INA, whether Obasohan's *conviction* constituted an "aggravated felony," defined as "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). This is analogous to the inquiry that a sentencing court undertakes when determining whether a prior conviction constitutes a "violent felony" for purposes of sentencing enhancements under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). To make this determination in the sentencing context, the Supreme Court in <u>Taylor v. United States</u>, 495 U.S. 575,

8

110 S. Ct. 2143 (1990), held that a court can look only to the statutory elements, charging documents, and jury instructions to determine whether an earlier conviction after trial was for generic burglary, so as to qualify as a "violent felony" under the ACCA. Because, like the INA, the plain language of the ACCA focuses on convicted conduct, the Court found that the statute generally prohibited courts from looking to the particular facts behind the conviction, leaving the court normally to look only to the fact of conviction and the statutory definition of the prior offense. We applied a modified Taylor approach to the immigration context in Jaggernauth, 432 F.3d at 1353-55 (vacating order of removal where neither the information, plea, judgment or sentence provided clear, unequivocal and convincing evidence that Jaggernauth was convicted of an aggravated felony).

In Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005), the Supreme Court applied the Taylor approach to a prior conviction based on a guilty plea. The Court held that a sentencing court determining the character of a prior, admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented (elsewhere in the opinion stated as "adopted by the defendant," the "defendant's own admissions or accepted findings of fact," or "judicial record" of "the factual basis for the plea [as] confirmed by the defendant"). Id. at 20, 25-26.

9

In this case, the elements of the conspiracy with which Obasohan was charged did not require that any loss amount be proved.[7] Neither the indictment nor the plea agreement specified any loss amount. Indeed, Obasohan was not charged with *any* loss, and did not admit to any loss by pleading guilty as charged. Moreover, there was no loss attributable to the only overt acts charged in the indictment, to which Obasohan admitted by pleading guilty. Contrary to the IJ's conclusion on remand, there was no evidence that the conspiracy with which Obasohan was charged "alleged *other* losses." (emphasis added). In fact, the prosecutor indicated that there was no loss charged at the plea colloquy. The IJ therefore could not have relied on the statutory elements of the offense, the indictment, the plea or the plea colloquy to conclude that Obasohan was convicted of an aggravated felony, as defined in the INA.

The IJ was also not entitled to rely solely on the loss amounts contained in the restitution order as "clear, convincing and unequivocal" evidence that Obasohan was "convicted of an aggravated felony." On its face, the restitution order only indicated three institutional victims and an amount of loss for each. The

_____

[7] Indeed, the underlying substantive offense to the conspiracy with which Obasohan was charged, 18 U.S.C. §1029(a)(1), also has no minimum loss associated with it. The Government did not indict him for conspiring to violate (or violating) §1029(a)(2), which does contain a minimum loss amount of $1,000.

10

restitution was not based on the conspiracy charge to which Obasohan pled guilty,[8]

nor on the overt acts to which Obasohan admitted by pleading guilty.[9]  Rather, the

order was based on *additional* conduct that was alleged only in the PSI: the

fraudulent use of particular credit cards—which would constitute a substantive

offense rather than a conspiracy.  Obasohan objected to the PSI's assertion that he

had used the credit cards associated with the losses.[10]  Obasohan therefore did not

admit, adopt, or assent to the factual findings that formed the basis of the

restitution order.  Furthermore, while a sentencing court in the criminal context

may order restitution not only for *convicted* conduct but also for a broad range of

*relevant* conduct,[11] the plain language of the INA requires that an alien have been

*convicted of* an aggravated felony to be removable.  The INA does not authorize

removal on the basis of the relevant conduct that may be considered at sentencing.

---

[8] As we have often repeated, the "gist of the crime of conspiracy" is "the agreement" to commit a crime, "not the commission of the crime which it contemplates . . . ." United States v. Williams, 469 F.3d 963, 966 (11th Cir. 2006) (quotation marks and citations omitted).

[9] None of the losses was tied to use of the one credit card which Obasohan admitted he had fraudulently acquired.

[10] The sentencing court was, of course, entitled to overrule Obasohan's objections, and to hold him responsible for those losses as acts done in furtherance of the conspiracy, even though Obasohan was not charged with, or convicted of, using the cards.  See United States v. Alston, 895 F.2d 1362, 1371-72 (11th Cir. 1990).

[11] Under the Federal Sentencing Guidelines, relevant conduct includes "all acts and omissions committed . . . by the defendant . . . during the commission of the offense of conviction . . . ", as well as "all harm that resulted from [those] acts and omissions[.]" U.S.S.G. § 1B1.3(a)(1), (a)(3).

11

Rather, what constitutes an "aggravated felony" for purposes of the INA must be tethered to convicted conduct. Relevant conduct for sentencing purposes, on the other hand, may include criminal conduct that was not charged. See United States v. Ignancio Munio, 909 F.2d 436, 438-39 (11th Cir.1990). Relevant conduct may also include acquitted conduct. United States v. Watts, 519 U.S. 148, 117 S.Ct. 633 (1997); United States v. Averi, 922 F.2d 765, 766 (11th Cir. 1991). Indeed, we have held that relevant conduct for sentencing purposes may even include losses caused by criminal conduct that cannot be prosecuted because those acts fall outside the statute of limitations. See United States v. Behr, 93 F.3d 764, 765-66 (11th Cir. 1996). See also United States v. Dickerson, 370 F.3d 1330, 1342-43 (11th Cir. 2004).

In Dickerson, we rejected the argument that a restitution order based on conduct that could not be prosecuted was inconsistent with the defendant's plea to a conspiracy charge, observing that "[c]ounsel confuses the separate issues of conviction and restitution." 370 F.3d at 1343, n. 20. Similarly, here, the IJ confused the issues of conviction and restitution. There was no basis in this record from which the IJ could have found by "clear, unequivocal and convincing" evidence that the restitution order was based on convicted or admitted conduct. See, e.g., Knutsen v. Gonzales, 429 F.3d 733, 739-40 (7th Cir. 2005) (vacating removal order based on admission of loss caused by relevant conduct and

12

contained in restitution order; holding that inquiry should focus narrowly on losses "particularly tethered to convicted counts alone."). See also Khalayleh v. INS, 287 F.3d 978, 979-80 (10th Cir. 2002) (conviction constituted aggravated felony where although defendant pled guilty to only one count in indictment, that count incorporated by reference a scheme to defraud that admittedly caused losses in excess of $10,000); Chang v. INS, 307 F.3d 1185, 1191 (9th Cir. 2002) (vacating removal order based on restitution award in excess of $10,000 where amount of loss admitted in the plea agreement was less than the requisite amount); Munroe v. Ashcroft, 353 F.3d 225, 227 (3d Cir. 2003) (conviction constituted aggravated felony where defendant pled guilty to fraud charges that alleged loss in excess of $10,000, even though sentencing court later reduced restitution amount to $9,999); Ferreira v. Ashcroft, 390 F.3d 1091, 1099 (9th Cir. 2004) (conviction constituted aggravated felony where charging document alleged loss, and plea agreement set restitution at $22,305 for fraud conviction); Conteh v. Gonzales, 461 F.3d 45, 55-56 (1st Cir. 2006) (conviction constituted aggravated felony where defendant was convicted of a conspiracy charge which also alleged overt acts in furtherance of the conspiracy that caused losses in excess of $10,000).[12]

---

[12] We note that if the immigration court were authorized to base a finding of an aggravated felony on conduct and victim losses that were not charged, proven or admitted, it would be impossible for a criminal defendant to evaluate the immigration consequences of a guilty plea at the time of entering that plea, because those consequences would be known only at the time of sentencing. Where loss amounts are charged and proven or admitted, however (as was the case in Khalayleh, Chang, Munroe, Ferreira and Conteh) no such concern arises.

13

Moreover, the restitution order was insufficient as a matter of law for the Attorney General to have met his burden to show that the conviction constituted an aggravated felony under the INA (as an offense of fraud or deceit involving a loss in excess of $10,000) by "clear, convincing and unequivocal" evidence. The restitution order—which in this case was the only document that made reference to any loss—was based on factual findings regarding conduct and loss amounts that were not charged, proven or admitted. The sentencing court in the underlying criminal case was entitled to make these findings by a "preponderance of the evidence," rather than by "proof beyond a reasonable doubt." Alston, 895 F.2d at 1373 (quotations and citations omitted). The IJ, on the other hand, had to find that Obasohan had been convicted of an offense of fraud or deceit involving a loss in excess of $10,000 by "clear, unequivocal, and convincing" evidence. Because the sentencing court was entitled to base its restitution order on factual findings made by a lower standard of proof, it was error for the IJ to conclude that the order, standing alone, constituted "clear, unequivocal and convincing" proof of the loss necessary to transform Obasohan's conviction into an aggravated felony under the INA.

Accordingly, we GRANT the petition, REVERSE the denial of the motion for reconsideration, and REMAND to the BIA for reconsideration of Obasohan's order of removal consistent with this opinion.

14