**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ARMAN AKOPOVICH KHALULYAN, AKA Armen Khalulyan, *Petitioner,* v. MERRICK B. GARLAND, Attorney General, *Respondent.* | No. 21-70909 Agency No. A071-083-833 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted January 27, 2023
San Francisco, California

Filed March 30, 2023

Before: Ronald M. Gould, Johnnie B. Rawlinson, and
Daniel A. Bress, Circuit Judges.

Opinion by Judge Bress

# SUMMARY[*]

## Immigration

Dismissing in part and denying in part Arman Khalulyan's petition for review of a decision of the Board of Immigration Appeals that found him removable for having been convicted of an aggravated felony under 8 U.S.C. § 1101(a)(43)(M)(i), which describes an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," the panel held that: (1) in evaluating whether the government has satisfied the "exceed[ing] $10,000" requirement, the relevant loss amount for a conspiracy conviction is the loss associated with the conspiracy; and (2) the agreed-upon sentencing enhancement in Khalulyan's plea agreement was sufficient to prove that his offense of conviction involved more than $10,000 in losses.

Khalulyan and several others were charged in a 20-count indictment. Count one charged the defendants with conspiracy to possess fifteen or more unauthorized access devices (credit and debit cards), in violation of 18 U.S.C. § 1029(b)(2). The indictment alleged that the defendants installed "skimming devices" on gas pump credit card readers, enabling the defendants to make off with the credit card numbers of customers. Khalulyan pleaded guilty to count one, and the other charges were dismissed. An Immigration Judge later ordered Khalulyan removed,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

finding that his conspiracy conviction rendered him removable and that he was not entitled to relief from removal. The BIA dismissed Khalulyan's appeal.

Khalulyan did not dispute that his conspiracy conviction categorically qualified as a crime involving fraud or deceit under § 1101(a)(43)(M)(i). The disagreement instead related to the requirement that the offense be one "in which the loss to the victim or victims exceeds $10,000." On this point, courts employ a "circumstance-specific" approach, under which the court looks to the particular circumstances in which an offender committed a fraud or deceit crime on a particular occasion. Under this approach, courts are generally free to consider any admissible evidence relevant to the loss amount. The Supreme Court has instructed, however, that the loss to the victims must be tethered to the offense of conviction and cannot be based on acquitted or dismissed counts.

Khalulyan's principal argument was that the IJ and BIA never determined how much loss he personally caused. And he pointed out that there was no record evidence that the district court in his criminal case made any such findings, which are also not reflected in his plea agreement. Khalulyan thus contended that the government did not meet its burden of proof on the loss threshold. The panel concluded that the problem with Khalulyan's argument was that he was convicted of conspiracy and, under the basic law of conspiracy, the amount of loss tethered to a conviction is the loss associated with the conspiracy itself because all co-conspirators are criminally liable for reasonably foreseeable overt acts committed by others in furtherance of the conspiracy they have joined.

The panel held that under § 1101(a)(43)(M)(i), the loss tied to a conspiracy conviction is the loss associated with the scheme that forms the basis for the conviction. The panel explained that when an alien has been convicted of a conspiracy to commit a qualifying crime of "fraud or deceit," the government need not ascribe to the alien co-conspirator some individual portion of the overall conspiracy-related loss to demonstrate that the loss threshold has been satisfied.

The panel also concluded that the government had met its burden of proving that the conspiracy to which Khalulyan pleaded guilty involved more than $10,000 in losses. Khalulyan in his plea agreement admitted that he knew his co-conspirators were stealing credit card numbers to make fraudulent purchases, and that ten or more victims were involved. Critically, Khalulyan agreed to a sentencing enhancement for a loss of more than $250,000. The panel explained that there was no basis to treat that stipulation as reflecting anything other than the loss associated with the conspiracy count of conviction and that no further parceling of this amount as between Khalulyan and his co-defendants was required.

The panel found support for its approach in *Doe v. Attorney General of United States*, 659 F.3d 266 (3d Cir. 2011). There, the petitioner pleaded guilty to adding and abetting wire fraud, but in later removal proceedings argued that the loss fell short of $10,000 because his plea agreement identified only a single transaction under that amount. The Third Circuit rejected that argument, reasoning that the petitioner pleaded guilty to aiding and abetting an entire scheme, not merely a single discrete act identified in his plea agreement. The panel concluded that similar logic applied to Khalulyan.

In a concurrently filed memorandum disposition, the panel concluded that petitioner was not entitled to relief from removal.

## COUNSEL

Kevin W. Harris (argued), Kevin W. Harris Attorney at Law, Sacramento, California; Ryan P. Friedman, Friedman Law Firm Inc., Sacramento, California; for Petitioner.

Ilana J. Snyder (argued) and Joanna L. Watson, Trial Attorneys; Anthony P. Nicastro, Assistant Director; Brian Boynton, Principal Deputy Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

# OPINION

BRESS, Circuit Judge:

An alien who is convicted of an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" may be removed from the United States. 8 U.S.C. §§ 1101(a)(43)(M)(i), 1227(a)(2)(A)(iii). The question before us is whether petitioner's qualifying conspiracy conviction exceeded the $10,000 threshold when he stipulated in his plea agreement to a sentencing enhancement for a loss of more than $250,000. We hold that in evaluating whether the government has satisfied the "exceed[ing] $10,000" requirement in § 1101(a)(43)(M)(i), the relevant loss amount for a conspiracy conviction is the loss associated with the conspiracy. We further hold that the agreed-upon sentencing enhancement in petitioner's plea agreement is sufficient to prove that his offense of conviction involved more than $10,000 in losses. Petitioner is therefore subject to removal.[1]

## I

The petitioner, Arman Khalulyan, was born in the former Soviet Union in what is now Armenia. He entered the United States with his family in 1992 at age seven, becoming a lawful permanent resident in 1994.

In 2015, Khalulyan and several others were charged in a 20-count indictment in the United States District Court for the Central District of California. Count one charged

---

[1] In a concurrently filed memorandum disposition, we conclude that petitioner is not entitled to relief from removal.

the defendants with conspiracy to possess fifteen or more unauthorized access devices (credit and debit cards), in violation of 18 U.S.C. § 1029(b)(2). The indictment alleged that the defendants installed "skimming devices" on gas pump credit card readers throughout Southern California, enabling the defendants to make off with the credit card numbers of gas station customers. Count one of the indictment identified 89 overt acts in support of the conspiracy and twelve occasions on which the defendants had installed or attempted to install the skimming devices or purchased materials for their scheme.

Khalulyan pleaded guilty to count one, and the other charges were dismissed. In his plea agreement, Khalulyan admitted that he "entered into an agreement between one or more other persons to operate a credit card skimming operation." He further admitted that on multiple occasions, he helped his co-conspirators install skimming devices at gas pumps to steal customers' credit and debit card numbers. Khalulyan's admitted role in the conspiracy was to distract and block the view of gas station attendants so they would not notice his co-conspirators installing the devices. Khalulyan admitted to engaging in this ploy at gas stations across Southern California, knowing that the stolen card numbers "would be used by members of the conspiracy, without authorization, to make fraudulent purchases." The plea agreement also recited how Khalulyan's co-conspirators were later caught with 494 blank credit cards encoded with stolen numbers, as well as device-making equipment.

In his plea agreement, Khalulyan agreed to the application of a 12-level sentencing enhancement for a "Loss of More Than $250,000." *See* U.S. Sentencing Guidelines Manual § 2B1.1(b)(1)(G) (U.S. Sentencing

Comm'n 2015). Khalulyan also agreed to sentencing enhancements for offenses involving ten or more victims and for trafficking in unauthorized access devices. Khalulyan was sentenced to 18 months' imprisonment and three years' supervised release.

In 2017, the Department of Homeland Security sought Khalulyan's removal. An Immigration Judge (IJ) found that Khalulyan's conspiracy conviction rendered him removable and that Khalulyan was not entitled to relief from removal. The IJ thus ordered that Khalulyan be removed to Armenia. The Board of Immigration Appeals (BIA) dismissed Khalulyan's appeal.

Khalulyan timely petitioned for review in this court. We have jurisdiction under 8 U.S.C. § 1252. Although 8 U.S.C. § 1252(a)(2)(C) prevents us from reviewing final orders of removal against aliens who have committed aggravated felonies, we have "jurisdiction to determine our own jurisdiction" and therefore to decide whether an alien committed an aggravated felony that can support removal. *Aguilar-Turcios v. Holder*, 740 F.3d 1294, 1299 (9th Cir. 2014). We review this purely legal question de novo. *Fuentes v. Lynch*, 788 F.3d 1177, 1180 (9th Cir. 2015) (per curiam).

## II

### A

"Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Various offenses qualify as "aggravated felonies" for purposes of this provision. *See id.* § 1101(a)(43) (defining "aggravated felony"). Relevant here, an "aggravated felony" includes an offense that

"involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," or a "conspiracy to commit" such an offense. *Id.* §§ 1101(a)(43)(M)(i), (U). Thus, one who is convicted of conspiracy to commit an offense involving fraud or deceit in which the loss to the victims exceeds $10,000 has committed an "aggravated felony" and is removable under § 1227(a)(2)(A)(iii). The government must demonstrate removability by clear and convincing evidence. *Id.* § 1229a(c)(3)(A).

To determine whether an offense qualifies as one involving "fraud or deceit," we use the categorical approach. *Kawashima v. Holder*, 565 U.S. 478, 483 (2012). That requires us to "look[] to the statute defining the crime of conviction, rather than to the specific facts underlying the crime." *Id.* Khalulyan does not dispute that his conviction for conspiracy to possess fifteen or more unauthorized access devices, 18 U.S.C. § 1029(b)(2), categorically qualifies as a crime involving fraud or deceit under § 1101(a)(43)(M)(i).

The disagreement in this case instead relates to the second of § 1101(a)(43)(M)(i)'s principal requirements: that the fraud offense be one "in which the loss to the victim or victims exceeds $10,000." On this aspect of the analysis, we employ a "circumstance-specific" approach. *Nijhawan v. Holder*, 557 U.S. 29, 38 (2009). We are not limited to the elements of the offense of conviction, as we are when the categorical approach applies. Instead, in assessing whether the offense involved more than $10,000 in loss, we look to "the particular circumstances in which an offender committed a . . . fraud or deceit crime on a particular occasion." *Id.* at 32.

Because our assessment of the $10,000 loss threshold is "circumstance-specific," we are also "not limited to only those documents which a court applying the modified categorical approach may review." *Kawashima v. Holder*, 615 F.3d 1043, 1056 (9th Cir. 2010). The list of materials we may consult includes "charging documents, jury instructions," "special jury finding[s]," "judge-made findings," "written plea documents," "the plea colloquy," "sentencing-related material," and a "defendant's own stipulation[s]." *Nijhawan*, 557 U.S. at 41–42. But nor are we limited to sentencing-related materials or the record in the underlying criminal case. *Orellana v. Mayorkas*, 6 F.4th 1034, 1036, 1040–41 (9th Cir. 2021). Instead, courts (and the BIA) "are generally free to consider any admissible evidence relevant" to whether the offense involved more than $10,000 in loss. *Id.* at 1041.

The Supreme Court has instructed, however, that "the loss must be tied to the specific counts covered by the conviction." *Nijhawan*, 557 U.S. at 42 (quotation omitted). Thus, "[f]or purposes of 8 U.S.C. § 1101(a)(43)(M)(i), the loss to the victim must be 'tethered to [the] offense of conviction' and 'cannot be based on acquitted or dismissed counts.'" *Orellana*, 6 F.4th at 1043 (quoting *Nijhawan*, 557 U.S. at 42) (second alteration in original).

Khalulyan's principal argument is that the IJ and BIA never determined how much loss Khalulyan personally caused through his participation in the "skimming device" scheme. And he points out that there is no evidence in the record that the district court in his underlying criminal case made any such findings, which are also not reflected in his plea agreement. Khalulyan thus contends that the government has not met its burden of proof on the $10,000 loss threshold. Khalulyan further maintains that his role in

the criminal scheme was minor, asserting before the IJ that he was paid $100 to $200 per day and made a "[c]ouple thousand" dollars total for his efforts to distract gas station employees.

The problem with Khalulyan's argument is that he was convicted of conspiracy. Under the basic law of conspiracy, the amount of loss "tethered to" a conspiracy conviction, *Nijhawan*, 557 U.S. at 42, is the loss associated with the conspiracy itself. That is because "all co-conspirators [are] criminally liable for reasonably foreseeable overt acts committed by others in furtherance of the conspiracy they have joined, whether they were aware of them or not." *United States v. Hernandez-Orellana*, 539 F.3d 994, 1007 (9th Cir. 2008) (citing *Pinkerton v. United States*, 328 U.S. 640, 647 (1946)); *see also United States v. Long*, 301 F.3d 1095, 1103 (9th Cir. 2002) (per curiam) (explaining that under *Pinkerton*, "a conspirator [is] criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy").

In pleading guilty to count one, Khalulyan necessarily acknowledged his conspiratorial liability associated with the device-skimming scheme. And the loss associated with that scheme, and thus Khalulyan's conviction, is the loss tied to the conspiracy as a whole. We hold that under § 1101(a)(43)(M)(i), the loss tied to a conspiracy conviction, *see Nijhawan*, 557 U.S. at 42, is the loss associated with the conspiratorial scheme that forms the basis for the conspiracy conviction. When an alien has been convicted of a conspiracy to commit a qualifying crime of "fraud or deceit," the government need not ascribe to the alien co-conspirator some individual portion of the

overall conspiracy-related loss to demonstrate that the $10,000 loss threshold in § 1101(a)(43)(M)(i) has been satisfied.

There remains the question of whether the government has proven that the conspiracy to which Khalulyan pleaded guilty involved more than $10,000 in losses to the victims. We easily conclude that the government has met its burden. Khalulyan in his plea agreement admitted that he knew his co-conspirators were stealing credit card numbers to make fraudulent purchases, and that ten or more victims were involved. Critically, Khalulyan further agreed to a 12-level sentencing enhancement for a "Loss of More Than $250,000." We may consider this stipulated amount under the circumstance-specific approach. *See Nijhawan*, 557 U.S. at 42–43 ("The defendant's own stipulation, produced for sentencing purposes, show[ed] that the conviction involved losses considerably greater than $10,000."). There is no basis to treat the $250,000 loss enhancement stipulation in Khalulyan's plea agreement as reflecting anything other than the loss associated with the conspiracy count of conviction. For purposes of § 1101(a)(43)(M)(i), no further parceling of this amount as between Khalulyan and his co-defendants is required.

We find support for our approach in the Third Circuit's decision in *Doe v. Attorney General of United States*, 659 F.3d 266 (3d Cir. 2011). There, the petitioner, Rodov, pleaded guilty to aiding and abetting wire fraud and stipulated in his plea agreement that the losses exceeded $120,000. *Id.* at 268. When the government tried to remove him, Rodov argued that the loss fell short of $10,000 because "the plea agreement specifically identifie[d] as the basis for his conviction only a single

specific transaction"—accepting a fraudulent check—"in the amount of $6,447." *Id.* at 275.

The Third Circuit rejected this argument. It reasoned that the petitioner pleaded guilty to "aiding and abetting the entire scheme," not merely a "single discrete act of accepting a $6,447 transfer." *Id.* at 276. Because Rodov pleaded guilty "to aiding and abetting the whole of a large-scale criminal endeavor," the § 1101(a)(43)(M)(i) loss calculation could account for all $120,000 of Rodov's loss stipulation in his plea agreement. *Id.*; *see also Khalayleh v. INS*, 287 F.3d 978, 980 (10th Cir. 2002) (holding that the $10,000 threshold was met because "[t]he 'offense' of conviction was the entire scheme charged in Count Two of the indictment" and "the 'loss' to be measured is the loss resulting from that scheme").

Similar logic applies to Khalulyan's conspiracy conviction. Khalulyan did not merely plead guilty to his individual conduct of blocking the view of gas station attendants; he pleaded guilty to entering the unlawful agreement that was the basis of the conspiracy. *See Doe*, 659 F.3d at 276. Properly understood, the agreed-upon sentencing enhancement reflects losses attributable to the "skimming device" scheme's co-conspirators acting in tandem—all of whom were charged in the same indictment based on the same facts for the same conspiracy. As the government points out, although Khalulyan was charged as part of a 20-count indictment and pleaded guilty only to count one, the remaining counts do not contain any additional facts beyond what is set forth for the conspiracy charge. Because Khalulyan's plea agreement admitted all the relevant facts contained in the indictment, the BIA correctly concluded that the § 1101(a)(43)(M)(i) loss calculation should account for the losses tied to the

conspiracy that formed the count of conviction.   *See Nijhawan*, 557 U.S. at 42.

B

Khalulyan makes three other arguments, but they are not persuasive.   *First*, Khalulyan claims that his case is more analogous to *Alaka v. Attorney General of United States*, 456 F.3d 88 (3d Cir. 2006), *Obasohan v. United States Attorney General*, 479 F.3d 785 (11th Cir. 2007), and *Rampersaud v. Barr*, 972 F.3d 55 (2d Cir. 2020).   But *Alaka* and *Rampersaud* involved fact-specific inquiries into whether particular loss amounts were sufficiently tethered to the offenses of conviction.   Neither case involved conspiracy convictions.   These cases are thus inapposite.

The Eleventh Circuit's decision in *Obasohan* is also distinguishable.   In that case, Obasohan pleaded guilty to one count of conspiracy to produce, use, and traffic in counterfeit access devices.   479 F.3d at 786.   But the indictment alleged that the conspiracy involved only one unauthorized transfer of a credit card, which the government acknowledged had led to no financial loss.   *Id.* Nevertheless, the district court later ordered $37,000 in restitution based on Obasohan's fraudulent use of other credit cards.   *Id.* at 786–87.   The BIA then found that this amount satisfied the $10,000 loss threshold in § 1101(a)(43)(M)(i).   *Id.* at 787.

The Eleventh Circuit disagreed.   It did so in part on the ground that the elements of the conspiracy with which Obasohan was charged did not require any loss amount to be shown.   *Id.* at 789.   This part of *Obasohan* is no longer good law after the Supreme Court's decision in *Nijhawan*, which for the $10,000 threshold element rejected the categorical approach and held that the "circumstance-

specific" approach applies. *See Nijhawan*, 557 U.S. at 33 (specifically identifying *Obasohan* as the among the circuit court decisions that had applied the categorical approach to the loss amount element).

*Obasohan* also went on to explain that the $37,000 restitution order did not satisfy § 1101(a)(43)(M)(i) because "[t]he restitution was not based on the conspiracy charge to which Obasohan pled guilty, nor on the overt acts to which Obasohan admitted by pleading guilty." 479 F.3d at 789 (footnotes omitted). Instead, the restitution order "was based on *additional* conduct" that was not "tethered to convicted conduct." *Id.* at 789–90; *see also id.* 790 (explaining that there was "no basis" to conclude that "the restitution order was based on convicted or admitted conduct"). That is not what we have here. There is no reason to believe that Khalulyan's $250,000 loss enhancement stipulation was based on anything other than the conspiracy to which he pleaded guilty.

*Second*, Khalulyan argues that the BIA erred in relying on the loss stipulation in his plea agreement because the stipulation could encompass "potential" losses in addition to "actual" ones. But we have previously held that "[p]otential or intended losses can satisfy" the $10,000 threshold for conspiracy offenses. *Li v. Ashcroft*, 389 F.3d 892, 896 n.8 (9th Cir. 2004), *overruled on other grounds by Nijhawan*, 557 U.S. at 33; *see also, e.g.*, *Rad v. Att'y Gen. U.S.*, 983 F.3d 651, 670 (3d Cir. 2020) ("Today, we join the Second Circuit, Ninth Circuit, and Board in recognizing that a conspiracy or attempt to commit fraud or deceit involving over $10,000 in intended losses qualifies as an aggravated felony."); *Ljutica v. Holder*, 588 F.3d 119, 126 (2d Cir. 2009); *In re S-I-K-*, 24 I. & N. Dec. 324, 327 (B.I.A. 2007).

*Third*, Khalulyan maintains that the government did not meet its burden to show loss exceeding $10,000 because there is no indication that the district court in Khalulyan's criminal case has ordered him to pay restitution. This argument is beside the point. Although a restitution order can be sufficient evidence of a loss exceeding $10,000, *see, e.g.*, *Nijhawan*, 557 U.S. at 43, we have never held that a restitution order is *required* before an alien can be removed consistent with § 1101(a)(43)(M)(i). Nor has Khalulyan identified any authority supporting that position.

The statute requires the alien to have been convicted of an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). It does not require a court order requiring an alien to pay that amount. The amount of "loss" can instead be proven in other ways, as it was here through Khalulyan's stipulation to a sentencing enhancement for loss of more than $250,000. "In the absence of any conflicting evidence (and petitioner mentions none), this evidence is clear and convincing." *Nijhawan*, 557 U.S. at 43.

\*          \*          \*

We hold that the government carried its burden of showing that Khalulyan's offense of conviction involved losses exceeding $10,000. Because Khalulyan's conviction is an aggravated felony under §§ 1101(a)(43)(M)(i), (U), he is removable under § 1227(a)(2)(A)(iii). For these reasons and those set forth in our accompanying memorandum disposition, the petition for review is

**DISMISSED IN PART AND DENIED IN PART.**