[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12552

Non-Argument Calendar

_____

ROMAN GOLTIESCU,

                                                                Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                                Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A087-660-867

_____

Before ROSENBAUM, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Roman Goltiescu seeks review of the Board of Immigration Appeals' ("BIA") decision affirming an order of removal based on his conviction for an aggravated felony. Goltiescu argues that his conviction for conspiracy to commit wire fraud did not qualify as an "aggravated felony," as defined in 8 U.S.C. § 1101(a)(43)(M)(i) and (U), because the government did not prove by clear and convincing evidence that the loss to the victims exceeded $10,000. Because records from Goltiescu's criminal case show he admitted that the loss amount attributable to the conspiracy well exceeded $10,000, the BIA properly determined that Goltiescu was convicted of an aggravated felony. We therefore deny the petition.

## I.

Goltiescu is a native and citizen of Moldova who was admitted to the United States in 2008 and became a lawful permanent resident in 2012. In 2013, Goltiescu pled guilty under a plea agreement to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and the district court sentenced him to one year and one day of imprisonment, plus two years of supervised release.

According to an agreed factual basis for the plea agreement, Goltiescu and his attorney signed, Goltiescu participated in a scam involving the purported sale of nonexistent vehicles to unsuspecting victims over the internet. Goltiescu acted as a "money mule," opening several bank accounts in the names of various aliases

where victims transferred funds for the purchase of vehicles that Goltiescu's coconspirators advertised. The factual basis identified wire transfers from seven victims to Goltiescu's accounts—ranging from $10,000 to $29,980—totaling $148,477. Goltiescu wired most of the money to coconspirators in Hungary and kept some for himself.

Thus, in the plea agreement, Goltiescu agreed that the loss related to the wire-fraud conspiracy was greater than $120,000 but less than $200,000, and that "the amount of restitution is $148,477." Goltiescu also agreed to forfeit "all proceeds traceable to the offense, . . . including . . . the sum of $148,477 in United States currency," which "represent[ed] gross proceeds from the wire fraud conspiracy to which the defendant has agreed to plead guilty." Consistent with the plea agreement and the agreed factual basis, the sentencing court found that the total loss was $148,477 and ordered restitution in that amount.

In 2014, the Department of Homeland Security initiated proceedings to remove Goltiescu, asserting that he had been convicted of an "aggravated felony" that "involv[ed] fraud or deceit in which the loss to the victim or victims exceeds $10,000." After the government submitted certified records from his criminal case, Goltiescu's attorney admitted the conspiracy conviction but disputed the loss amount, asserting that no loss amount was charged in the information.

Ultimately, the immigration judge ("IJ") ruled that the government had shown by clear and convincing evidence that the loss

to victims was more than $10,000.  The IJ explained that he could "look at any evidence" relevant to whether the fraud in fact involved losses to victims that exceeded $10,000.  And the IJ reviewed documents from the criminal case, including the criminal information, the plea agreement, and the agreed factual basis, which established "beyond any doubt that the loss was well in excess of $10,000."  The IJ distinguished our decision in *Obasohan v. U.S. Att'y Gen.*, 479 F.3d 785 (11th Cir. 2007), explaining that he was "not relying solely upon the restitution order of $148,477," but was instead "relying upon the highly probative admission of the respondent in writing of all the specific fraudulent transactions he participated in which add up to significantly more than $10,000."  Accordingly, the IJ sustained the charge of removability. Goltiescu later filed, but eventually withdrew, an application for relief under the Convention Against Torture.  So the IJ issued a decision ordering Goltiescu's removal to Moldova.

Goltiescu appealed to the BIA, which affirmed the IJ's decision.  The BIA found Goltiescu's reliance on *Obasohan* misplaced because "government counsel in that case conceded that the restitution order was based in part on acts other than the offense of conviction."  Explaining that it applied a "circumstance-specific approach," the BIA found that the $148,477 forfeiture amount reflected proceeds derived from the scheme and was "thus traceable and sufficiently tethered to his conviction to show that the loss was $10,000 or more."  Finally, the BIA rejected Goltiescu's arguments about the standard of proof, noting that the "underlying facts and

the forfeiture amount were admitted and agreed to by the respondent." Goltiescu petitions for review.

## II.

"[W]e have jurisdiction to decide in a petition for review proceeding whether the BIA erred in determining that a petitioner's conviction is an aggravated felony." *Balogun v. U.S. Att'y Gen.*, 425 F.3d 1356, 1360 (11th Cir. 2005). "Although we review *de novo* whether a prior conviction qualifies as an aggravated felony, we review administrative fact findings under the highly deferential substantial evidence test." *Garcia-Simisterra v. U.S. Att'y Gen.*, 984 F.3d 977, 980 (11th Cir. 2020) (cleaned up). The agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review only the decision of the BIA, except to the extent that it adopts the IJ's decision or expressly agrees with the IJ's reasoning. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).

A noncitizen "convicted of an aggravated felony at any time after admission" is removable. 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" includes an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," or a conspiracy to commit such an offense. 8 U.S.C. § 1101(a)(43)(M)(i), (U). The government must present clear and convincing evidence that the loss amount exceeds $10,000. *See* 8 U.S.C. § 1229a(c)(3)(A); *Nijhawan v. Holder*, 557 U.S. 29, 42 (2009).

In *Nijhawan*, the Supreme Court held that the loss amount under § 1101(a)(43) referred to the specific, factual circumstances

surrounding the fraud, rather than an element of the fraud offense. *Nijhawan*, 557 U.S. at 40. So instead of looking to the "statute defining the offense," we must consider the "facts and circumstances underlying an offender's conviction," *id*. at 34, including the "entire record from a person's conviction," *Garcia-Simisterra*, 984 F.3d at 981. In *Nijhawan*, for example, the Court found clear and convincing evidence for a loss amount greater than $10,000 based on a factual stipulation at sentencing and a restitution order, and the lack of any conflicting evidence. *Nijhawan*, 557 U.S. at 42.

According to *Nijhawan*, the loss amount "must be tied to the specific counts covered by the conviction." *Id*. (quotation marks omitted). In *Obasohan*, for instance, we said that an immigration judge was not entitled to rely solely on a restitution order to establish the loss amount for an aggravated felony, where the restitution order included additional conduct not included in the plea, the loss amount in question was not admitted by the defendant, and no other evidence of loss was presented. *Obasohan*, 479 F.3d at 790–91, *overruled on other grounds by Nijhawan*, 557 U.S. at 33, 36.

Here, Goltiescu has not shown that the IJ or BIA erred in concluding that his conviction for conspiracy to commit wire fraud "involve[d] fraud or deceit in which the loss to the victim or victims exceeds $10,000," and so was an aggravated felony.[1] *See* 8 U.S.C. § 1101(a)(43)(M)(i), (U). As part of his guilty plea, Goltiescu made specific, detailed admissions that the loss stemming from his

---

[1] Goltiescu does not dispute that his conviction for conspiracy to commit wire fraud involved fraud or deceit. *See* 18 U.S.C. §§ 1343, 1349.

participation in the fraud conspiracy—that is, the funds that victims wired to Goltiescu's accounts to purchase nonexistent vehicles that his coconspirators offered for sale—totaled $148,477.  Goltiescu also expressly agreed to forfeit "the sum of $148,477," which he agreed "represent[ed] gross proceeds from the wire fraud conspiracy."  Not surprisingly, the district court adopted that loss figure and ordered restitution in the same amount.  Thus, as in *Nijhawan*, "[i]n the absence of any conflicting evidence (and petitioner mentions none), this evidence is clear and convincing" that the loss amount tied to the specific count of conviction easily exceeded $10,000.  557 U.S. at 43.

Goltiescu's arguments in response are unpersuasive.  The agency was permitted to consider the "entire record from [his] conviction," *Garcia-Simisterra*, 984 F.3d at 981, not just the elements of the charged offense, *Nijhawan*, 557 U.S. at 34, 40.  Nor is this case like *Obasohan*, where the defendant "did not admit, adopt, or assent to the factual findings that formed the basis of the restitution order."  479 F.3d at 790.  As the IJ explained, Goltiescu expressly admitted "specific fraudulent transactions he participated in which add up to significantly more than $10,000," despite his minor role in the conspiracy.  That the plea agreement was not binding on the court, as Goltiescu notes, does not undermine the probative force of these admissions.

Finally, Goltiescu distinguishes forfeiture from restitution, and suggests that the BIA erred in relying on the forfeiture amount because he was "not subject to a forfeiture order but rather he was

subject to a restitution order." But the agency generally may consider any "sentencing-related material," including forfeiture or restitution orders, when evaluating the specific factual circumstances surrounding the fraud. *See Nijhawan*, 557 U.S. at 42–43. And the distinction makes little difference here, in any case. The court ordered restitution in the equivalent amount Goltiescu agreed to forfeit in the plea agreement because it constituted proceeds from his conspiracy offense. Thus, the BIA properly considered Goltiescu's admission to the "underlying facts and the forfeiture amount" in determining that the $147,477 loss figure was "traceable and sufficiently tethered to his conviction to show that the loss was $10,000 or more."

For these reasons, we deny the petition for review.

**PETITION DENIED.**